(18 App. Div. 548.)

BUKER et al. v. LEIGHTON LEA ASS'N.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. BUILDING ASSOCIATIONS—FORFEITURE OF SHARES—EQUITABLE RELIEF.
Shareholders of a building association, whose shares had been forfeited for nonpayment of dues thereon, are not entitled to equitable relief therefrom on the ground that they had been defrauded by a secret agreement between the promoters of the association, where such shareholders, after knowledge of the agreement, and after consideration of the matter, refused to pay their dues, and their shares were then forfeited on due notice and in the manner prescribed in the constitution.

2. SAME—NONPAYMENT OF DUES—EXCUSING DEFAULT.
Failure of a shareholder to pay his dues is not excused by the refusal of the officers of the association to allow him to inspect the books, where the inspection was not demanded until long after the shareholder had ceased to pay his dues.

3. SAME—WAIVER OF FRAUD.
A fraudulent transaction by the promoters of a building association for their own benefit was settled by the association. The settlement substantially benefited the association, and the terms thereof were inserted in the constitution. The shareholders, with full knowledge, approved of and consented to the settlement. Held, that the shareholders could not afterwards rely on such fraudulent transaction between the promoters to excuse nonpayment of dues for which their shares were forfeited.
Follett and Green, JJ., dissenting.

Appeal from special term, Monroe county.

Action by Amos M. Buker and others, suing on their own behalf and for all other shareholders having a common interest in the subject of the action who may come in as plaintiffs. The complaint was dismissed on the merits, with costs, and plaintiffs appeal. Affirmed.

The action was commenced October 25, 1895, and is an equitable action to set aside plaintiffs' subscriptions for stock, and to recover back the moneys paid thereon, as obtained through fraud, and to set aside the acts of the defendant as illegal as against the plaintiffs, and to restore the plaintiffs to their original constitutional rights, and to restrain the defendant from depriving the plaintiffs of their rights in the corporation defendant. The defendant is a domestic corporation, duly organized pursuant to chapter 122 of the Laws of 1851, and of the amendments thereto. Its object is to accumulate a fund for

the purchase of real estate and making improvements thereon, and to provide building lots or homesteads for its members. It was incorporated March 13, 1891, and its place of business is Rochester.

On the 21st of January, 1891, one J. Z. Culver obtained from Kate B. Leighton an option to purchase a considerable quantity of land situate in the town of Brighton, Monroe county. Two days before the incorporation of the defendant, and on March 11, 1891, the said Culver entered into a written agreement, with himself and 49 other persons, to the effect, after reciting that Culver had entered into the optional agreement for the purchase of the land, being 200 building lots, that the parties had agreed to purchase the said premises for the sum of $70,000, and convey the same to the Leighton Lea Association, "now being formed, for the consideration of $120,000." It was agreed: That each of the parties thereto should take one share in the said association, and pay, on the organization of the association, the sum of $300 upon his said share, "the balance of the said respective shares to be paid in the transfer of the said premises or credited upon the mortgage to be given as hereinafter stated. That a conveyance of said premises be made or procured to be made to the Leighton Lea Association as soon as the same shall be duly organized, and upon the consideration being paid or secured to be paid therefor as follows: The full consideration thereof to be $120,000,—$10,000 thereof to be paid in cash; a bond of the association, in the usual form, to secure $60,000 thereof, and the interest from the date thereof, to be given to Kate B. Leighton, or other person, with a mortgage as first lien upon said premises, with the same conditions as said bond, and collateral thereto, payable ten years after the date thereof, with semiannual interest, with the privilege of paying the same sooner whenever interest is due, with the usual tax and interest clauses; and another bond of the association, in the usual form, to secure the payment of $50,000 and interest from ———, with a mortgage collateral thereto, with the same conditions as such bond, as a second lien upon the said premises." It was further provided that this last-mentioned mortgage should be payable in installments of $10,000 each; that Culver should be trustee for the benefit of the parties, and that the moneys received upon the mortgage should, after the payment of expenses, be distributed to the parties; and that the mortgage should contain a provision that, if the streets fronting on the lots should not be graded 4⅔ feet wide, and plank sidewalks laid in front of each lot, and one shade tree planted in front of each lot within a year from the date of the agreement, then the association could cause the same to be done and credit the expense upon the bond and mortgage of $50,000. On the 22d of May, 1891, Kate B. Leighton, pursuant to the option, conveyed the 200 lots to Culver, and on the 8th of July, 1891, Culver conveyed the same to the defendant. These conveyances were recorded September 3, 1891. The defendant executed the two mortgages and paid the money specified in the above agreement. The parties who executed that agreement, that will hereafter be termed the "syndicate members," and were the promoters of the association, paid $15,000 in cash into the association, being $300 on a share held by them.

Upon the incorporation of the defendant, articles of association were entered into, or a constitution, known in the case as the "first constitution." It provided that the defendant's capital stock should be 200 shares of $600 each. It described the premises to be purchased by the defendant, being the 200 building lots aforesaid. The members of the corporation subscribed this constitution, and it further provided that the shareholders who did not pay their stock in full should pay $2 weekly from March, 1891, until the land should be purchased, and assessed by the defendant, and allotted to the members severally, and thereafter the same upon the value of the share or lots as assessed by the association. At any time after allotment a member was entitled to a warranty deed of his lot upon paying the balance of assessments remaining unpaid thereon, interest, and taxes; the scheme being to give each shareholder a clear title to a building lot upon paying his share in full, and to apply the weekly dues of the shareholders who had not paid in full upon his prospective lot. Allotments of lots should be made as soon as $40 had been paid to the defendant on at least two-thirds of the lots. A fine of 25 cents a week was imposed for failure to pay the weekly dues. Dividends on surplus funds after payment of all debts and liabilities should be made to members in proportion to dues

paid on their shares, respectively. Forfeiture of shares was provided for upon default in payment of dues, after proper notice by the defendant. A. board of directors of nine members transacted the business of the defendant, and its other officers were a president, secretary, and treasurer. The books, accounts, and records of the corporation should be open to examination to any member. The constitution could be amended by a majority vote of all the members upon four weeks' previous written or printed notice, containing the proposed amendments and served on each member personally or by mail addressed to his or her last place of residence as shown by the books or papers of the corporation. There were a large number of shareholders in the association besides the syndicate members, who were called the "long-share members." To the latter class the plaintiffs belonged. The plaintiff Buker held two shares, upon which he paid $535.20. The plaintiff Reed held two shares, upon which he had paid $230. The plaintiffs P. Cameron Shutt and Emmet Shutt held together one share, upon which they had paid $40. The plaintiff James R. Shuster held one share, upon which he had paid $120. The plaintiffs all became members of the defendant at its organization, and subscribed the first constitution. The plaintiffs and other long-share holders claimed, in the winter following the incorporation of the defendant, that they had discovered that Culver had not conveyed to the defendant all the land which in equity he was bound to convey; that the syndicate agreement of March 11, 1891, was a secret agreement, confined to the syndicate members alone; that they subscribed the constitution and took their shares under .the belief that the land was to cost but $70,000; and that they had been defrauded by this syndicate agreement, and by the execution of the $50,000 mortgage; and they demanded an investigation of the matter, and at a meeting of the association early in 1892 a committee was appointed of three members of the long-share holders of which the plaintiff Reed was one, to investigate the whole matter and report to the association. Investigation was had, and it resulted in disclosing facts of syndicate agreement, and its consequences as above stated, and the failure of Culver to convey all of the land that he should have conveyed to the defendant. An action was commenced by the defendant against Culver to compel him to convey the land in controversy, and on the 19th of July, 1892, an agreement was entered into between Culver, the other syndicate members, and the defendant, and substantially concurred in by the long-share members, reciting that the members of the association who had joined subsequent to its organization were dissatisfied with the price paid for the land and the management of the association, and differences had arisen between the association and the parties represented by Culver as trustee, and that all were desirous of an amicable and reasonable adjustment of their difficulties, and it was provided that "the party of the first part [the defendant], in consideration of the covenants and agreements hereinafter contained and made by the parties of the second part [the syndicate members], signing this agreement, and other advantages and considerations received by it, does hereby agree on its part to so amend its by-laws and constitution as to recognize each and every party of the second part signing this agreement as members of its association, and give them a receipt for a full paid-up $600 share therein, and in addition thereto interest on the $300 so paid in by said person for nine months,—that is, upon a redrawing or drawing of lots not taken, any party of the second part drawing a lot of the value of $600 shall have a deed of the same without further payment, and the payment in cash of $12; if drawing one less than $600, such person shall be entitled to the difference in cash of the valuation of said lot and said $612; and if they draw one valued at more than $600 they shall pay the difference in cash in the same manner as other shareholders in said association. Said payments to the parties signing this agreement are to be made pro rata as fast as it shall have funds over and above interest on mortgages, taxes, and expenses of management, and, in addition thereto, each shall be entitled to participate in any and all dividends that said association shall pay, equally with all other members thereof, in accordance with the number of shares they may severally hold. This agreement on the part of the association is made upon the express condition that the same shall be ratified at a general meeting of said association, to be called within a reasonable time." The syndicate members further agreed that they would discharge, as far as-

they were able, the $50,000 mortgage, or assign to the defendant their interest therein. A settlement was arranged with Culver as to the lands, and he agreed to deed to the defendant additional lands, being 10 additional lots, and other lands in the vicinity of the defendant's premises, to discharge the $50,000 mortgage, canceling the syndicate agreement of March 11th under certain conditions, and restore a check of $2,500 that had been given by the association on the 20th of February, 1892. A meeting of the association was duly called to consider this agreement and the proposed settlement with Culver. At such meeting the plaintiff Reed attended, and the minutes of the meeting disclose that it was upon his motion that the president of the association was authorized to execute the agreement with the syndicate members for the defendant. The agreement was adopted by the association, and the agreement with Culver carried out, and as a result the litigation with Culver was discontinued, the corporation received the additional land of great value, and was relieved altogether from the $50,000 mortgage; the syndicate members receiving full paid-up shares of $600, they having paid but $300. Their profits in the transaction as promoters, instead of being $50,000, as first arranged, were about $15,000. They had assumed no liability in the matter, except the risks, if any, attending the advance of the original $300 per share, or $15,000, as promoters in the enterprise, provided the stock should be of par value.

As we have seen, the agreement of settlement provided for an amendment of the constitution of the defendant. A meeting of the association was held on May 11, 1893, of which notice was given, accompanied by a printed copy of the constitution as proposed to be amended. The constitution was adopted at first over a few dissenting votes, but finally by a unanimous vote of the members of the association present at the meeting. All the plaintiffs were present at this meeting, but claim that they voted against the new constitution. The new constitution was signed by all the members of the association (the syndicate and long-share members), and by the plaintiff Buker, except four shareholders, being the other plaintiffs. The trial court found that this constitution was duly ratified and approved. The changes created by the new constitution consisted in giving the shareholder a vote in proportion to the number of shares held by him; the first constitution giving the shareholder but one vote, no matter how many shares he may have held. The new constitution provided for the credit to the syndicate members of $612 per share for the $300 paid by them. It provided for the replotting of the lots made necessary by the additional lands received from Culver. These were the substantial changes in the new constitution from the old. At a special meeting of the association held on the 13th of October, 1893, pursuant to a notice sent to each member of the association, there was a redrawing under a replotting and appraisal of the lots belonging to the association. This was adopted upon the motion of the plaintiff Buker, who was then a member of the board of directors, and had been for some time; and the records of the association show that the plaintiffs P. Cameron, Emmet Shutt, and James R. Shuster, respectively, in response to a circular letter of the board of directors suggesting a new appraisal and allotment of the lots, and an increase of size of the lots, sent written communications to the board of directors of the defendant approving of it, and consenting to the same. The records further show that the plaintiffs' last payment upon their stock was as follows: Reed's, March 1, 1892; P. C. Shutt, August 31, 1891; James R. Shuster, March 1, 1892; Buker, October 18, 1894. The defendant, by resolution, forfeited the shares of stock of the plaintiffs Reed, P. C. Shutt, and J. R. Shuster for nonpayment of dues December 28, 1894, and forfeited the stock of the plaintiff Buker on July 8, 1895, for the same reason. These forfeitures were upon due notice to each plaintiff, as required by the constitution. The stock of the plaintiff Emmet Shutt was not forfeited so far as the record discloses.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

George D. Reed, for appellants.
William F. Cogswell, for respondent.

WARD, J. This is an action by shareholders—First, to get reinstated as such in the corporation; and, second, to have certain acts of the defendant declared void as against them, or, at all events, to allow the plaintiffs to recover what they have, respectively, paid on their shares to the defendant. The present status of these plaintiffs is that of persons holding forfeited shares in the corporation, and with no right or standing in it at law, but claiming equitable relief, and through it restoration to their forfeited rights.

The first question to consider, then, is whether the evidence in the case entitles them to this equitable relief, or to damages for being wrongfully deprived of their shares by the defendant. The shares held by the plaintiffs were not paid-up shares, nor had their weekly dues been kept up, which were necessary to preserve their shares and maintain a standing in the corporation. The shares were forfeited in the way pointed out by the constitution, and upon due notice, at the same time that the shares of a number of others in like position with themselves were forfeited. The proceedings to forfeit were regular in all respects. They were taken upon a notice of 60 days to pay up or the shares would be forfeited. The plaintiffs Reed and Shuster had been in default upon their dues from March, 1882, to December 28, 1894; the plaintiff P. C. Shutt was in default from August 31, 1891, to December 28, 1894; the plaintiff Buker from October, 1894, to July, 1895.

The chief claim that the plaintiffs make to excuse their default is that the defendant's officers refused to allow the plaintiffs to examine the books of the corporation, and they consequently could not learn the real condition of affairs, so as to judge whether to keep up the payments upon the shares. There is no proof of such demand in the record; but it is claimed that the plaintiffs offered to prove such demand, and that it was excluded by the trial court, which was error. Our attention has been called to only the following attempts to make this proof: Smith, the secretary of the defendant, while upon the stand as a witness at the trial, was asked by the plaintiffs' counsel if he did not remember a time when Buker came to his office and asked the witness to allow him to see the books of the association. This was objected to as immaterial, and sustained, to which the plaintiff excepted. Later on the witness was asked if, within 30 days prior to April 3, 1895, Buker asked the witness to allow him to see the books, accounts, documents, and securities of the association. This was objected to as before, and the objection sustained. It will be observed, as to the first question ruled upon, that no time is fixed when the request to examine the books was made. The other question points to about the 1st of March, 1895, which was several months after Buker was in default upon his payments, and after he had apparently decided not to make any further payments. Besides, Buker was a director, and had access as such to the books and papers of the corporation; and it is absurd to say that he had not the opportunity, from all his experience, as disclosed by the evidence, in the affairs of the corporation, to learn its condition. The plaintiff P. Cameron Shutt was examined as a witness, and he was asked by the counsel if he made a demand of Steele (one of the defendant's directors) to show him

the books, accounts, and securities of the Leighton Lea Association. This was objected to, and excluded, to which the plaintiffs' counsel excepted. The time referred to was in the fall of 1894. That was long after this plaintiff was in default upon his payments. It does not seem that any demand was made by the other plaintiffs to examine the books and papers. The trial was before the court without a jury, and, conceding that it was error to reject this evidence, we do not see how it could have affected the result. The refusal to pay the weekly dues on the part of the plaintiffs was evidently upon consideration. What opposition occurred to the proceedings to amend the constitution and complete the settlement with Culver and the syndicate in a number of nearly 200 shareholders came from these 4 plaintiffs. They had fair and full notice of the consequences that would follow their failure to pay their weekly dues. In the meantime it was necessary to carry on the business of the corporation; raise money to pay the incumbrances upon its property; determine who were the shareholders and who were not, who had not paid in full their shares and who were to do so in the future; and but one course was left open to the officers of the corporation, if they did their duty, and that was to enforce the dues which the delinquent shareholders had contracted to pay, or to forfeit their shares. The case fails to disclose any equitable reason why the plaintiffs should be relieved from these forfeitures.

The plaintiffs' counsel insists that the new constitution was not legally adopted, and was void, and that we should so declare. A careful examination of this subject leads us to the conclusion that this constitution was legally adopted, and is the law of the defendant and its shareholders. The defendant is not a stock corporation. Therefore the law as to the issue of stock and the responsibility of stockholders has no application to it. The point, made by the plaintiffs' counsel, that, under section 42 of the stock corporation law (chapter 564, Laws 1890, as amended by chapter 688, Laws 1892), the provision in the amended constitution, and in the contract of settlement, allowing the syndicate members paid-up shares of $612 for the payment of $300, is void, is not tenable. That question cannot in any event be passed upon in this action, as the syndicate members are not parties to this action in such a sense that their individual rights to the shares can be passed upon.

Finally, the plaintiffs insist that the syndicate contract, which gave its members a bonus of $50,000, was fraudulent and void as against the plaintiffs, and this fraud was not eliminated, waived, or settled by subsequent transactions and settlements between the syndicate and the defendant and the long-share holders, and it is the duty of the court so to declare in this case. The difficulty with this position is that the defendant has settled this matter, and put that settlement in its constitution, and has received substantial benefit by reason of such settlement, and all these plaintiffs, in one form or another, with full knowledge of all the circumstances, have approved of and consented to it. They have, therefore, waived the right to raise this question here. Even an unconscionable arrangement will not be disturbed where there has been a ratification of it with knowl-

edge of all its bearings after time has been had for consideration. Kent v. Mining Co., 78 N. Y. 159. The syndicate had taken the initiative in securing the land necessary for the purpose of the incorporation of the defendant before it was organized. They had advanced money for that purpose, or had contracted to do so. But the long-share holders concluded that the syndicate members were asking too much, and were taking an unfair advantage of the other shareholders; and they rebelled, investigated, and finally it was all settled upon such reasonable terms as seemed to suit all, or nearly all, of the parties interested in the shareholders' property. It was a compromise which left the defendant in a much better situation than it was before. This compromise was made with full knowledge of all the circumstances of the case. The parties in interest having made it, or assented to it, the court will not disturb it.

The true rule in such cases was laid down in Gamble v. Water Co., 123 N. Y., at page 99, 25 N. E. 202, by Peckham, J., speaking for the court of appeals, where he says:

"It is not, however, every question of mere administration or of policy, in which there is a difference of opinion among the shareholders, that enables the minority to claim that action of the majority is oppressive, which justifies the minority in coming to a court of equity to obtain relief. Generally the rule must be that in such cases the will of the majority shall govern. The court would not be justified in interfering, even in doubtful cases, where the action of the majority might be susceptible of different construction. To warrant the interposition of the court in favor of the minority shareholders in a corporation or joint-stock association, as against the contemplated action of the majority, where such action is within the corporate powers, a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company and in a manner inconsistent with its interests."

In another portion of the opinion the learned judge says, at page 98, 123 N. Y., and page 202, 25 N. E.:

"I think that, where the action of the majority is plainly a fraud upon, or, in other words, is really oppressive to, the minority shareholders, and the directors or trustees have acted with and formed a part of the majority, an action may be sustained by one of the minority shareholders, suing in his own behalf and that of all others coming in, etc., to enjoin the action contemplated, and in which action the corporation should be made a party defendant."

From the rule thus laid down we must reach the conclusion in this case that the majority, in making the settlement with Culver and the syndicate, and in amending the constitution to enforce such settlement, acted in fraud of the rights of the minority, and in reckless disregard of its interests, to sustain the plaintiffs' contention in this respect. We cannot find any evidence of this on the part of the majority. The whole proceeding of settlement and adjustment seems to have been with an honest desire to adjust all differences upon a fair basis, so that the corporation might proceed to transact its business, and its shareholders in the future be protected in their rights; and we are not prepared to say but that they made the

very best settlement, under the circumstances, that could have been made.

The judgment appealed from should be affirmed, with costs.

HARDIN, P. J., and ADAMS, J., concur.

FOLLETT, J. (dissenting). It is alleged in the complaint, and is admitted in the answer, that the defendant has assumed to forfeit the shares of the plaintiffs for nonpayment of dues; and it is now argued that by reason thereof they have no interest in the corporation, and no right to maintain this action. Whether the action of the defendant, in declaring their shares forfeited, was justified, was an important issue in the case. It stands confessed that a gross fraud was attempted to be perpetrated by this defendant in the purchase of the real estate, as against the class of shareholders to which the plaintiffs belong. By a suit in equity the perfect consummation of this fraud was frustrated. This naturally created a feeling of distrust on the part of the so-called long shareholders towards the defendant's managers and the so-called syndicate shareholders; and it seems to me that it was not unreasonable for the long shareholders to insist on their rights to examine the books and papers of the defendant before making further payments on their shares, and that it was inequitable for the defendant to assume to forfeit the interests of these plaintiffs in the corporation for the nonpayment of their dues without first affording them an opportunity to examine into its affairs.

Section 8 of article 1 of the constitution provides:

"The books, accounts, securities, and other properties in the charge of the secretary and treasurer, and each of them, shall be at all times subject to the examination of the association and board of directors, or any member thereof."

It was offered to be shown upon the trial that, while Buker was a member of the board of directors, and before his shares were forfeited, he called upon the secretary, and asked to examine the books, accounts, and documents of the defendant. This was objected to, and was excluded. It was also offered to be shown that several of the plaintiffs other than Buker, before their shares were forfeited, and while they were members of the association, asked to examine its books and accounts, and that this right was denied them, and afterwards their shares were forfeited. By the judgment the action of the defendant in forfeiting the shares of these plaintiffs, who have paid considerable sums into the corporation, is sanctioned. The plaintiffs were not bound to assume that the confession after discovery of a fraud, and a partial restitution under compulsion, was an absolute guaranty of the integrity of the subsequent management of the affairs of the corporation. Forfeitures are not favored by the courts, and they are easily excused if the conduct of the person or corporation attempting to enforce them has been inequitable. If these plaintiffs had been able to establish that this defendant had refused to allow them to examine into the affairs of this company, and for that reason they refused to make further payments, it would have afforded a sufficient ground for setting aside the resolution de-

claring their shares forfeited.    It was error to exclude this class of evidence.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

GREEN, J., concurs.