(63 App. Div. 507.)

BUKER et al. v. LEIGHTON LEA ASS'N.

(Supreme Court, Appellate Division, Fourth Department.   July 23, 1901.)

1. BUILDING ASSOCIATIONS—SUBSCRIPTIONS—FRAUD—EQUITABLE RELIEF.
     Where members of an association, after discovery of fraud in procur-
     ing their subscriptions, have elected to retain their membership, and to
     obtain an adjustment of their rights as members, they cannot secure
     such relief, and also recover back the money paid in by them.

2. SAME—APPEAL—LAW OF CASE.
     Where, on a former appeal in a suit against a building association,
     certain of its constitutional amendments were held valid, the trial court
     cannot disregard such decision, and declare such amendments invalid,
     and restore plaintiffs to all their rights under the original constitution.

Appeal from trial term, Monroe county.

Action by Amos M. Buker and others against the Leighton Lea
Association.   From a judgment of the supreme court, both parties
appeal.   Modified.  ·

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and RUMSEY, JJ.

Geo. D. Reed, for plaintiffs.
William F. Cogswell, for defendant.

WILLIAMS, J.   The judgment should be modified so as not to
adjudge the constitution as amended invalid, and as modified af-
firmed, with costs to the defendant.   The action was brought in
equity by some of the members of the defendant association in their
own behalf and for all others who might join therein.   The relief
asked for was:  (1) That their subscription for shares be declared
void and be vacated, and the moneys paid therefor be returned,
with interest;  (2) that the amendments to the constitution be de-
clared invalid, as not having been properly or legally adopted;  (3)
that the forfeiture of plaintiffs' membership shares be declared to
have been illegal, and that the same be restored;  and other relief
incidental to these items specified.

This appeal was brought on for hearing upon the pleadings, de-
cision, and judgment, without any case-made, so that the evidence
given on the trial is not before us, and we must rely for the facts
upon the admissions in the answer and the decision of the court.
The trial court very properly held that the plaintiffs were not en-
titled to the relief that their subscriptions for shares be canceled
as void, and the moneys paid therefor be returned to them, with
interest.   As suggested by the trial justice in his opinion, the plain-
tiffs could, upon the discovery of the alleged fraud, without doubt
have elected to cancel their subscriptions and withdraw from mem-
bership, and could have recovered back the money they had paid
in.   But they elected, after discovery of the fraud, to retain their
membership, and to seek to obtain an adjustment of their rights
as members in the association.   They cannot now, after several
years have elapsed, secure this relief, and recover back the money
paid in by them.

In order to properly consider the other two questions, we need to
understand the facts.   It seems that prior to March 11, 1891, one

J. Z. Culver had entered into an agreement with one Mrs. Leighton for the purchase of certain lands in the town of Brighton, adjoining the city of Rochester. On that day Culver entered into an agreement, with 49 other gentlemen, wherein the purchase from Mrs. Leighton was recited, and the parties agreed to organize an association known as the "Leighton Lea Association," and that the premises described in the agreement should be conveyed to the association for $120,000, of which $10,000 cash and a mortgage upon the property for $60,000 was to be given to Mrs. Leighton to pay her for the property, and a second mortgage for $50,000 upon the property was to be given to Culver as trustee for the benefit of the parties to such agreement. The association was organized on the 13th day of March, 1891; its capital stock was divided into 200 shares, of $600 each; and subscription books for shares were opened, and about 140 subscriptions thereto obtained. The different members of the association came to be known, the original 50 as syndicate members, and those coming in subsequently as long-share members. Mrs. Leighton conveyed the property to Culver, and Culver conveyed it to the association, and the cash was paid, and the two mortgages given, as provided by the agreement. It was afterwards discovered that Culver had not deeded to the association all the land which Mrs. Leighton had deeded to him, and for which the association had paid her, and the long-share members discovered the contents of the syndicate agreement, and that the $50,000 mortgage given to Culver in trust was really a bonus to the syndicate members. It was claimed these things constituted a fraud upon the long-share holders, and an action was brought in equity to obtain such relief as the long-share members claimed they were entitled to, to wit, to set aside as fraudulent the $50,000 mortgage to Culver as trustee, and to recover from Culver the land purchased from Mrs. Leighton, and not conveyed to the association, and other relief incidental thereto. There was a settlement of this action made, whereby the $50,000 mortgage was set aside; a part of the land withheld by Culver was conveyed to the association; the syndicate members received each one paid-up share for $612 by payment of $300; and the defendant's constitution was to be amended by allowing such settlement; and there was to be a replotting and redrawing of lots, etc. This settlement was not agreed upon, but was opposed by some of the long-share members, including plaintiffs. A meeting of the members of the association was called about May 13, 1893, for the purpose of amending the constitution, and notices, with copies of the proposed amendment to the constitution, were sent to all the members, upward of 190 in number. At the meeting a vote was taken on the adoption of the amended constitution, and 27 voted for and 5 (the plaintiffs in this action) against its adoption. The president declared the amended constitution adopted, and thereafter, on a motion to make the adoption unanimous, 50 voted in favor of the motion, and 5 (the plaintiffs) against it. There were not present at the meeting a majority of all the members of the association. The constitution provided that the same might be amended by a majority vote of all the members

(article 3, § 1, Articles of Association, herein designated "Constitution"). Immediately after the meeting the amended constitution, adopted in the manner already stated, was presented to and the signatures thereto of a majority of all the members of the association were obtained. The whole number at that time, as shown by the books and papers of the association, was 214, of whom 147 signed the amended constitution, and 67 (among whom were plaintiffs) did not. The settlement so made was carried out, and the business of the association has since then been carried on under such amended constitution. This action was not commenced until October 25, 1895, 2½ years after the alleged settlement and adoption of the amended constitution. The plaintiffs, believing the alleged amended constitution and the acts of the association thereunder were illegal and void, requested of the association and its officers the privilege of examining the books, accounts, securities, and other property of the association, as provided for in the constitution (article 1, § 8), and this request and permission were refused. The plaintiffs thereafter refused to make further payments on their shares until they had been given an opportunity to investigate the condition of the association, and examine the books, accounts, and securities of the association, as provided by the constitution; and, upon failure by plaintiffs to make such payments, the association, by its board of directors, elected, and, acting under the amended constitution, declared the plaintiffs' shares forfeited for such nonpayments, under article 2, § 8, of the constitution.

Upon these facts, the trial court held that the forfeiture of plaintiffs' shares was invalid, and plaintiffs should be restored to membership, with all their rights, liabilities, and privileges existing under the original constitution, as of the date of such forfeitures, and that the amendments to the constitution were not legally or properly adopted, and were invalid as to the plaintiffs.

This case was before this court on appeal from a judgment resulting from a former trial thereof, and it was then held by a divided court that the amendments to the constitution should not be held invalid, and that the plaintiffs should not be restored to membership after their shares had been forfeited. Two of the justices of this court dissented in an opinion by Mr. Justice Follett, wherein it was said that the plaintiffs should be restored to membership, and therefore the judgment should be reversed, and a new trial granted. Buker v. Association, 18 App. Div. 557, 46 N. Y. Supp. 35. An appeal was taken to the court of appeals, and the judgment was there reversed, upon the opinion of Mr. Justice Follett in the court below. Buker v. Association, 164 N. Y. 557, 58 N. E. 1085. On the retrial of the case, the judgment upon which we are now reviewing, the trial justice followed this decision of the court of appeals, in directing the restoration of the plaintiffs to membership, and the judgment so far we must affirm, following also the court of appeals.

But in this last trial the court went further, and held the amended constitution was not properly or legally adopted, and that as to these plaintiffs it should be held invalid and of no effect, and that

the plaintiffs should be restored not only to membership, but with all their rights, liabilities, and privileges existing under the original constitution. In so holding the court disregarded the unanimous decision of this court upon the former appeal upon this subject, which was in no way disturbed by the decision of the court of appeals. In this we think the trial court erred. It should have followed, as we must follow, the former decision of this court upon this question. Mr. Justice Ward states the facts with reference to the settlement and the adoption of the new constitution, and then says: "The plaintiffs' counsel insists that the new constitution was not legally adopted, and was void, and that we should so declare. A careful examination of this subject leads us to the conclusion that this constitution was legally adopted, and is the law of the defendant as its shareholders." We need not reiterate here the reasons for such conclusion, which were fully set forth in the opinion of Mr. Justice Ward, and which were not objected to by the two dissenting justices.

For the reasons hereinbefore suggested, we conclude that the judgment appealed from should be modified by striking out all of the second adjudging clause, and all of the first one after the words "restored to membership," and as modified affirmed, with costs of this appeal to defendant. All concur.