LEIGHTON v. LEIGHTON LEA ASS'N et al.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. CORPORATIONS (§ 215*)—LIABILITY OF STOCKHOLDERS—NATURE.

The liability of stockholders of a corporation, organized to acquire realty for the members, for the corporate debts, is contractual, and the statutory provisions fixing such liability are a part of the contract of membership.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 826–854; Dec. Dig. § 215.*]

2. CORPORATIONS (§ 3*)—"STOCK CORPORATION."

A corporation organized under Laws 1851, c. 122, which by section 1 authorizes any number of persons, not less than nine, to incorporate to accumulate a fund to purchase realty, or make improvements on lands, or aid its members in acquiring realty, and to accumulate a fund to be returned to its members not receiving advances for acquiring realty, when the funds amount to a certain sum per share, is a nonstock corporation, within General Corporation Law (Laws 1890, c. 563, as amended by Laws 1895, c. 672) § 3, subd. 2 providing that a "stock corporation" is one having a capital stock divided into shares, and which is authorized to distribute to the holders dividends or shares of the surplus profits, and that a corporation is not a stock corporation because of having issued certificates, called "certificates of stock," which are merely certificates of membership, and which is not authorized by law to distribute dividends or share profits from its operations.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 7, p. 6664.]

3. CORPORATIONS (§ 264*)—LIABILITY OF STOCKHOLDERS—DEBTS OF ASSOCIATION.

Even though a corporation, organized for acquiring realty for its members, etc., was a nonstock corporation, so that the provision of Stock Corporation Law (Consol. Laws 1909, c. 59) § 59, that no action should be brought against stockholders to enforce their statutory liability for debts of the corporation until judgment against it and execution returned unsatisfied, would not apply, a creditor of the corporation was bound to first procure judgment and have execution returned unsatisfied before he could proceed against the members of the corporation, so that the statute of limitations would not begin to run against an action against them until after return of execution unsatisfied.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1084–1098; Dec. Dig. § 264.*]

4. CORPORATIONS (§ 264*)—LIABILITY OF MEMBERS—ENFORCEMENT BY CREDITORS—LIMITATIONS.

A creditor of a corporation, organized under Laws 1851, c. 122, to acquire a fund to purchase realty, or aid its members to acquire realty, seeking to enforce a liability of members for unpaid subscriptions, must bring the action within the six years which the corporation itself would have to enforce the liability of members for unpaid subscriptions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1084–1098; Dec. Dig. § 264.*]

Appeal from Trial Term, Monroe County.

Action by William T. Leighton, for himself and other creditors of the Leighton Lea Association, against the Leighton Lea Association and others. From an interlocutory judgment for defendants, plaintiff appeals. Reversed, and new trial granted.

See, also, 122 N. Y. Supp. 139.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Burlew Hill, for appellant.
William De Graff, for respondents Platt and others.
Ednor A. Marsh, for respondents Knapp and Amos.
Joseph Lee Humphrey, for respondents Fyles.
George D. Reed, for respondents Fladd and others.
Charles M. Williams, for respondent Salter.
John S. Bronk, for respondents White and others.
Heman W. Morris, for respondents Reibling.

KRUSE, J.   The object of this action is to make the stockholders or members of the Leighton Lea Association, a domestic corporation, personally liable for the debts of the association. The suit is based upon two judgments, executions having been issued thereon and returned wholly unsatisfied—one, a judgment of $26,077.70, deficiency in foreclosure of a mortgage accompanied by a bond, made by the association for a part of the purchase price of certain real property sold to it; and the other for $216.75, recovered upon a promissory note made by the association. The bond and mortgage were executed July 8, 1891, payable in 10 years, and time of payment was extended from July 8, 1901, to January 8, 1903. The note was made December 2, 1899, payable 30 days after its date. The foreclosure action was commenced October 25, 1902, default having been made in payment of interest, and the judgment for deficiency entered July 27, 1903. The action on the note was commenced October 20, 1902, and judgment entered thereon October 28, 1902. This action was commenced August 28, 1906.

Two grounds of liability are asserted against the defendants: The right of action which the association itself has and of which the creditors may avail themselves, against such of the stockholders who have not paid their stock subscriptions or assessments in full; the other to enforce a statutory liability against all the stockholders and members, both against such as have paid in full as well as such as have not. On March 13, 1891, the association was incorporated. It purports, according to its articles of association, to be organized pursuant to chapter 122 of the Laws of 1851. Its authorized capital stock, as therein stated, is $120,000, to be paid in periodical payments. The purposes of the association, as stated in its articles of association, are as follows:

"Its object shall be to accumulate a fund for the purchase of real estate, make improvements thereon, and to provide building lots or homesteads for its members."

The plan was to acquire certain lands, divide them into lots among the members, the association to convey to each member his lot upon payment of the full purchase price, and at the same time have the lot released from the lien of the mortgage before referred to, given by the association upon the entire tract of land to secure the purchase price thereof.

Two classes of members or stockholders are included as defendants: (1) Such as have paid for their lots and received releases from the mortgage, as to whom the trial court directed a dismissal of the complaint; and (2) such as have not paid in full, who were held liable to the extent of such of their stock subscriptions as became due within six years immediately prior to the commencement of this action. The case comes here on the findings and decision of the trial judge alone. The evidence is not returned.

The plaintiff alone appeals, contending that all of the stockholders or members are liable for the debts of the association, whether their stock subscriptions or assessments have been paid in full or not. That claim is founded upon two sections of the act of 1851—section 11, which makes the shareholder of any association formed under the act individually liable to the creditors of the association, to an amount equal to the amount of stock held by him, for the debts of the association; and section 7, which provides, in short, that no holder of redeemed shares shall claim to be exempt from making monthly payments upon the ground that by reason of losses or otherwise the association has continued longer than was originally anticipated, whereby payments on shares may amount to more than the amount originally advanced, with legal interest.

I think it unnecessary to refer in detail to the various transactions which led up to the giving of the deed by the owner of the tract and taking back the bond and mortgage. The enterprise went through various stages of development, beginning with an option to purchase the land, the forming of a syndicate, the organizing of the association, leaving out some of the property purchased for the benefit of the promoter and syndicate, with a litigation between the stockholders and promoter and syndicate, resulting in the undoing in part at least of the wrong which had been done to the stockholders, and amending the by-laws to meet the new conditions.

As has been said, the purpose of the association, as outlined in its articles of association and as actually carried out, was to accumulate a fund, and each member pay for and acquire an absolute title to his lot, free from the lien of the mortgage; and that was known and assented to by the original owner of the land, who sold the land and took the bond and mortgage for the unpaid purchase price, as will be seen by the twentieth finding of fact contained in the decision; and that plan was carried out by the association and mortgagee, as will be seen by the twenty-second finding. It may be well to quote that finding:

"Twenty-Second. From the inception of the association and the giving of the association mortgage to Kate B. Leighton, down to the commencement of the action to foreclose said mortgage, Kate B. Leighton as executrix, and her assigns, and the present plaintiff, William T. Leighton, had full knowledge, not only of the plan and scope of the association as outlined in its articles of association, but also of the fact that members, including the defendant, were induced to join said association in the expectation that lots would be deeded to them to the value of their stock, respectively, upon the payment to said association by said members of the full par value of their stock holdings, respectively, and that in that event the members would receive deeds of their lots free and clear of any claim, lien, or right held against said lots by the

said Kate B. Leighton, or her assigns; and no protest or objection was ever made by said Kate B. Leighton, or her assigns, or this plaintiff, to such procedure, but, on the contrary, the deeding of said lots to said members, respectively, was encouraged and permitted by said Kate B. Leighton and her assigns and this plaintiff, and this plaintiff, in many instances, was present when the final purchase price was paid by the members upon their lots and the deeds thereof transferred, and a release of the Leighton mortgage was, at the same time, delivered by the plaintiff for the purpose of making effective the transfer, and to induce the making of the final payment upon said lots respectively; and that the course of conduct of the said Kate B. Leighton, as executrix, and her assigns, and this plaintiff, has been such during said entire period as to estop her and them, and this plaintiff, and each of them, from questioning the validity and legality of the scheme or plan outlined in the constitution of the association, and thus carried out by their knowledge, assistance, consent, and co-operation."

Section 1 of the act (Laws 1851, c. 122), under which the association was ostensibly organized, provides:

"Any number of persons, not less than nine, may associate and form an incorporated company for the purpose of accumulating a fund for the purchase of real estate, the erection of buildings, or the making of other improvements on lands, or to pay off incumbrances thereon, or to aid its members in acquiring real estate, making improvements thereon, and removing incumbrances therefrom; and for the further purpose of accumulating a fund to be returned to its members, who do not obtain advances as above mentioned, when the funds of such association shall amount to a certain sum per share, to be specified in the articles of association."

The primary object of the statute seems to be the accumulation by the association of a fund for either (1) purchasing and improving real property, or (2) to be returned to its members with its increase, without acquiring real property; and the fund for acquiring real property may be for (1) purchasing and improving real property of the association or paying off incumbrances thereon, or (2) to aid its members in acquiring real property, making improvements thereon, and removing incumbrances therefrom.

Section 11 of the act provides:

"All of the shareholders of any association formed under this act shall be individually liable to the creditors of said association, to an amount equal to the amount of stock held by them respectively, for all debts contracted by such association. * * *"

That provision and section 7, relating to personal liability of the holder of redeemed shares, to which I have heretofore referred, should, however, be considered in connection with section 5, which reads as follows:

"All corporations formed under this act shall have power to borrow money for temporary purposes not inconsistent with the objects of their organization; but no loan for such purposes shall have a longer duration than two years, nor shall such indebtedness exceed at any one time one-fourth of the aggregate amount of the shares and parts of shares, and the income thereof actually paid in and received."

The defendants do not all assert the same grounds for nonliability. Among other grounds it is contended:

(1) That no statutory liability exists, because the association is a stock corporation and the bond and mortgage were not made payable within two years after they were made, and that the action against

the association upon the note was not brought within two years after the note became due, and so neither indebtedness is such as to make the stockholders liable under the provisions of the stock corporation law. Laws 1890, c. 564, § 58; Laws 1909, c. 61 (Consol. Laws 1909, c. 59) § 59.

(2) That under the plan of the association, as carried out and agreed to by the mortgagee, the doctrine of estoppel applies, and the holder of the bond and mortgage is estopped from claiming any statutory liability, or other liability, against the lot owner, who has paid for his lot and obtained a deed therefor, and the lot released from the lien of the mortgage.

(3) That assuming the association is organized under the act of 1851, as it purports to be, the association had no power to execute the bond and mortgage or incur the indebtedness and make the stockholders or members personally liable therefor.

Mr. Justice Sutherland, before whom the action was tried, held with the defendants upon the first and second grounds. Mr. Justice Nash held, in the case of Leighton v. Knapp, 115 N. Y. Supp. 1040, that the only authority for the association to create any indebtedness was under section 5 of the act, to which I have referred; that, whatever the rights of the holder of the bond or judgment for a deficiency might be as against the association, the shareholders of the association were not individually liable therefor; that they were liable only for such debts as the association is expressly authorized to contract, money borrowed for temporary purposes, and then only within the limitations prescribed by section 5 of the act.

If the bond and mortgage transaction is to be regarded as borrowing money temporarily, it clearly contravenes the provisions of section 5 of the act, as regards duration and amount of loan. If not of that character, it is claimed there is no authority for giving the bond and mortgage at all; and, besides that, the purposes of the association as declared by the articles of association, and as actually carried out, are not within the contemplation of the act of 1851.

Even if the association itself may not be in a position to invoke the doctrine of ultra vires, it does not necessarily follow that the stockholders may not do so and insist that no personal liability was created against them arising out of the bond and mortgage transaction. Close v. Potter, 155 N. Y. 145, 155, 49 N. E. 686; Ward v. Joslin, 186 U. S. 142, 151, 152, 22 Sup. Ct. 807, 46 L. Ed. 1093.

However that may be, I think it unnecessary to decide that question. Nor need the question as to whether the association is a stock corporation be determined, except so far as it relates to the promissory note judgment. I think the case may safely be disposed of against the plaintiff, as to the deficiency judgment, upon the doctrine of estoppel.

[1] The status of the judgment upon the promissory note is somewhat different from that of the deficiency judgment. There is nothing to show that the promissory note was not such an indebtedness as could properly be contracted by the association, and, as regards the limitations of the liability of stockholders contained in the provi-

sions of the stock corporation law, that question, and the liability of the defendants for the debts of the association, must be determined by the statutes fixing the liability, applicable at the time the debt was created, and measured and determined by the statute as it then existed. Such a liability is a contract liability, and the provisions of the statute fixing the liability are read into and become a part of the contract. Cochrane v. Weichers, 119 N. Y. 399, 23 N. E. 803, 7 L. R. A. 553; Close v. Potter, 155 N. Y. 145, 155, 156, 49 N. E. 686; Lang v. Lutz, 180 N. Y. 254, 73 N. E. 24.

[2] As has been seen, the bond and mortgage were made July 8, 1891, and the promissory note December 2, 1899. The general corporation law (Laws 1890, c. 563) went into effect May 1, 1891, just before the bond and mortgage were made. Section 2 of that act defines a stock corporation as a corporation having a capital stock divided into shares. But before the promissory note was made, in 1899, the definition of a stock corporation was amended (Laws 1895, c. 672, § 3, subd. 2) so as to read as follows:

"A stock corporation is a corporation having a capital stock divided into shares, [and which is authorized by law to distribute to the holders thereof dividends or shares of the surplus profits of the corporation. A corporation is not a stock corporation because of having issued certificates called certificates of stock, but which are in fact merely certificates of membership and which is not authorized by law to distribute to its members any dividends or share of profits arising from the operations of the corporation]."

The part in brackets is the amended part.

It is contended on behalf of the plaintiff that this court has decided that this particular association is a nonstock corporation. There is a statement to that effect in the opinion in the case of Buker v. Leighton Lea Association, 18 App. Div. 548, 46 N. Y. Supp. 35; but no such question was involved in that case. And, besides, the Court of Appeals reversed upon the dissenting opinion (164 N. Y. 557, 58 N. E. 1085), in which the question was not referred to in any way. Neither do I think that that was the effect of the decision in Buker v. Leighton Lea Association, 63 App. Div. 507, 71 N. Y. Supp. 610. However, I am of the opinion that, as regards the promissory note judgment, the association must be classed as a nonstock corporation, even if it can be regarded as a stock corporation when the bond and mortgage indebtedness was created. In Preston v. Rhinehart, 109 App. Div. 781, 96 N. Y. Supp. 851, it was held that the corporation there, which was organized under the Laws of 1851, was not a stock corporation, but a membership corporation.

While I think the Legislature by the various amendments to the general corporation law and the stock corporation law did not change the essential character of this corporation, so far as concerned its object and business, I think it could and did, in effect, so classify it in 1895 as to make it a nonstock corporation (if it was not that before) thereby fixing the liability of its members accordingly, as to debts of the association thereafter to be contracted.

By chapter 564 of the Laws of 1875 all corporations organized under the act of 1851 were made subject to the control of the superintendent of the banking department. The general corporation law of

1890, as amended in 1892 (Laws 1890, c. 563), as amended by Laws 1892, c. 687), defined a moneyed corporation as one formed under or subject to the banking or insurance laws; and section 1 of the stock corporation law of 1890 provided that the stock corporation law shall not apply to moneyed corporations. So that it would seem that the provisions of the stock corporation law relating to and limiting the liability of stockholders would not have applied, but for the fact that, at the same time that the general corporation law was amended in 1892, the stock corporation law of 1890 was also amended (Laws 1892, c. 688, § 1), by providing that article 1 shall not apply to moneyed corporations, and the provisions relating to and limiting the liability of stockholders are not contained in that article.

[3] It is contended that, if the association is a nonstock corporation, the provision of the stock corporation law that no action for the statutory liability shall be brought against the stockholder until judgment has been recovered against the corporation and an execution thereon has been returned unsatisfied in whole or in part has no application to this case, and that therefore the statute of limitations commenced to run from the time the indebtedness matured. I think, however, that irrespective of that provision the plaintiff was required first to exhaust his remedies against the association by way of judgment and execution, before he could proceed against the members or stockholders of the association (National Bank v. Dillingham, 147 N. Y. 603, 611, 42 N. E. 338, 49 Am. St. Rep. 692); and, if so, the statute of limitations would not begin to run until after the return of the execution. If the association is to be regarded as a moneyed corporation, the three-year statute of limitations applies to the enforcement of the liability against the members or stockholders, as well as against the association itself. Code Civ. Proc. § 394. And, as this action was commenced within three years after the return of the execution, its commencement would be timely.

[4] I think the trial court correctly applied the six-year statute of limitations to the unpaid subscriptions. A creditor has no better right than the association itself. If the cause of action is barred by the statute of limitations against the association, the same rule applies to a creditor who seeks to sequester its assets and apply them in payment of the debts of the association. The distinction between such an action and one accruing to a creditor upon a statutory liability after judgment and return of execution is pointed out by the learned trial justice, and I agree with what he says, and deem further discussion upon that question unnecessary.

I am of the opinion that all of the defendants who were members or stockholders of the association at the time the note was executed are personally liable for the judgment recovered upon the promissory note, with interest thereon, not exceeding, however, the amount of stock held by them at that time.

I think the interlocutory judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.