Badger Paper Co. vs. Rose and others.

Badger Paper Company, Appellant, vs. Rose and others,
Respondents.

*January 12 — February 2, 1897.*

*Corporations, when competent to contract: Stockholders' liability.*

1. A corporation becomes such, under our statute (secs. 1772, 1773, R. S.),
   on the day upon which its articles of incorporation are filed for
   record in the office of the proper register of deeds, and it is then
   capable of contracting obligations in its corporate capacity, though
   not fully organized; subject, however, to the statutory disability
   as to enforcing contracts made with nonmembers, before at least
   one half its stock shall have been subscribed for and twenty per
   cent. thereof actually paid in, and also to the personal liability of
   the stockholders upon such contracts.
2. Until such a corporation has become fully organized by the election
   of directors, the signers of the articles of incorporation have au-
   thority to manage its affairs, and a contract made by them in the
   name and for the benefit of the corporation binds it.   No ratifica-
   tion thereof is necessary; yet if the corporation when organized
   does ratify the same, such ratification will relate back to the time
   when the contract was made.
3. A person does not become a stockholder by merely signing a writ-
   ten agreement to take stock in a corporation to be formed, nor.
   until such subscription paper has been presented to the corpora-
   tion and accepted by it; and consequently he is not subject to
   personal liability upon a contract made before he so becomes a
   stockholder.

Appeal from a judgment of the superior court of Milwau-
kee county: J. C. Ludwig, Judge.   *Affirmed.*

Action to enforce the personal liability of stockholders of
a corporation for its debt contracted before the statutory
requirements as to subscription and payment for stock had
been complied with.

Prior to the 1st day of September, 1893, in contemplation
of organizing a corporation to publish a Democratic morn-
ing newspaper in the city of Milwaukee, a subscription list
was circulated, for the purpose of obtaining signers thereto

of persons who were willing to take stock in such an enterprise. The subscription paper was headed as follows: "We, the subscribers, do hereby subscribe for the capital stock of a corporation to be organized under the laws of Wisconsin, to own and operate and publish a Democratic morning newspaper in the city of Milwaukee. Our said subscriptions to be paid as follows, to wit, twenty-five per cent. at the time of the organization of said corporation upon call of the treasurer, and the remaining seventy-five per cent. in instalments, as the same may be called upon assessment levied by the board of directors." All the defendants signed such subscription list prior to, or soon after, the 1st day of September, 1893.

For some time prior to such date Clarence L. Clark operated a publishing establishment at the city of Madison, Wisconsin, and there published a Democratic newspaper called the "Madison Times." It was in contemplation that the plant would be removed to Milwaukee, and sold to the proposed corporation. Pursuant to such scheme articles of organization of a corporation were duly prepared, according to the laws of this state on the subject of the organization of corporations, the original of which was filed and recorded in the office of the register of deeds for Milwaukee county, Wisconsin, on the 5th day of September, 1893, and a properly verified copy thereof was duly filed in the office of the secretary of state. Clarence L. Clark was one of the chief promoters of the enterprise, and one of the signers of the articles of organization.

About the time such articles were filed Clark removed the aforesaid newspaper plant from Madison, Wisconsin, to Milwaukee, and there rented rooms and fitted the same up ready for the use of the corporation. All of the business of making such removal, renting rooms, and fitting up the plant in Milwaukee, ready for operations, was conducted by Clark, up to the meeting for the purpose of perfecting the

organization of such corporation, hereafter mentioned. On the 27th day of September, 1893, pursuant to a request made by Clark, as manager of the corporation, H. A. Frambach, on behalf of plaintiff, visited Milwaukee, and there contracted to sell to the Times Printing Company a quantity of paper for the use of such company. The business was done with Clark, who assumed to act for the corporation. He told plaintiff's agent that the company was incorporated, and to bill the paper to it. Thereafter, pursuant to the contract, the paper was sent to the Times Printing Company, and after the 6th day of October, 1893, the same was used by the corporation in the conduct of its business, but without notice on the part of the directors of the corporation, or any of the defendants, that any one was indebted to plaintiff therefor.

On the 6th day of October mentioned the persons who had signed the subscription paper, including defendants, convened for the purpose of organizing the corporation. Such subscription paper was then presented, and the signers participated in the organization, which was then and there completed, Clark being chosen manager. Thereafter, under the directions of Clark, the paper theretofore purchased was used. Clark subscribed for $40,000 of the stock, and turned over to the corporation the newspaper plant theretofore fitted up by him as aforesaid, and all material on hand, with the good will of the Madison Times and its subscription list, also the franchise of the United Press Association, in payment of such subscription.

This action was brought against the defendants as stockholders, under the statute which provides that if any corporation contracts debts before half its stock is subscribed for, and twenty per cent. thereof paid in, its stockholders then existing shall be personally liable for such debts. On the trial the facts above set forth appeared by the evidence uncontroverted; whereupon the court, on motion, directed a ver-

dict in favor of the defendants, to which plaintiff excepted. Judgment was entered pursuant to such verdict, from which plaintiff appealed.

*Nathaniel S. Robinson*, for the appellant, argued, among other things, that the contract sued on became the contract of the Times Printing Company by ratification, and that such ratification related back to the inception of the contract. The subscription for stock signed by the defendants was absolute on its face, and not conditional, and the contract made in their behalf became binding on the corporation immediately upon its organization. *Richelieu Hotel Co. v. International M. E. Co.* 140 Ill. 248.

For the respondents there was a brief by *Timlin & Glicksman*, and oral argument by *W. H. Timlin*.

Marshall, J. The first question to be determined is, To whom did plaintiff contract to sell the paper? In determining that question, the date when the Times Printing Company became a corporation competent to contract, as such, is important. Sec. 1772, R. S., provides that the articles of organization, or a verified copy thereof, "shall be recorded by the register of deeds of the county in which such corporation is located; and no corporation shall, until such articles be so left for record, have legal existence." Sec. 1773, R. S., provides that, "until the directors or trustees shall be elected, *the signers of the articles of organization shall have direction of the affairs of the corporation*," and that "no such corporation shall transact business with any others than its members, until at least one half of its capital shall have been duly subscribed, and at least twenty per centum thereof actually paid in; and if any obligation shall be contracted in violation hereof, the corporation offending shall have no right of action thereon; *but the stockholders then existing* of such corporation shall be personally liable upon the same." It is hardly possible that one can mis-

understand the plain meaning of these provisions.   Clearly, the Times Printing Company became a corporation on the 5th day of September, 1893, the day the articles of organization were filed for record in the office of the register of deeds for Milwaukee county.   From that day till October 6, 1893, the signers of the articles, *D. S. Rose*, Clarence L. Clark, and Peter Mulholland, had lawful authority to manage its affairs.   During that time it was capable of contracting obligations in its corporate capacity, subject to the statutory disability respecting the enforcement of the same, but liable, nevertheless, thereon, and its stockholders existing at the time of the making thereof personally liable as well.

It follows that the Times Printing Company, as a corporation, had lawful authority on the 27th day of September, 1893, to contract with plaintiff for the paper.   On that day its agent testifies that he sold the paper to such corporation, and with knowledge that, though incorporated, it had not yet been organized.   The evidence clearly shows that, prior to that time, and thereafter till the 6th day of October, 1893, the signers of the articles of organization, represented by Clark as manager, were active in promoting the corporate enterprise, and preparing to publish the paper as soon as the organization of the corporation could be perfected, and that the material in question was contracted for in furtherance of the general plan in which the corporators were engaged. The question of ratification was argued at considerable length by counsel to show that the obligation to pay for the paper became the contract of the corporation by ratification subsequent to its organization, though it is not claimed that there was any act of ratification other than by using the paper; but, in our view of the case, no ratification was necessary to make the contract with the plaintiff that of the corporation.   But, conceding that there was a ratification as claimed, it was of a contract theretofore made, in the name of and for the benefit of an existing corporation, by one who

assumed to act as its manager; hence such ratification would relate back to September 27, 1893. Ratification presumes power on the part of the ratifier to have made the contract in the first instance. *McArthur v. Times Printing Co.* 48 Minn. 319. Counsel for plaintiff seeks to make the contract that of the corporation upon the theory of adoption, instead of ratification, strictly so called. There is abundance of authority to support such doctrine when applied to contracts for the benefit of projected corporations. *McArthur v. Times Printing Co., supra; Pittsburg Mining Co. v. Quintrell,* 91 Tenn. 693; Thompson, Corp. § 5322. But the better view is that the corporation does not become liable after its creation, by "ratification," as the term is ordinarily understood, because ratification, as stated, presumes ability to contract at the time the unauthorized contract was made. Where there is no corporation in fact there cannot be any agent; hence the liability which the corporation incurs by adopting a contract made for its benefit before it had legal existence does not relate back to the unauthorized act, and make a contract as of that date, but the contract dates from the adoption of such act (*Pratt v. Oshkosh Match Co.* 89 Wis. 406), though no such case is presented here. When the obligation in question was incurred, the corporation was in existence. Clark and his assistants had absolute control of its affairs. The contract was made with the corporation through Clark, acting as its manager. It was within the scope of the business which the corporation was organized to conduct; hence whether Clark originally had authority to act from his associates or not, or whether the corporation became liable by subsequent ratification, such liability dates from the 27th day of September, 1893.

The foregoing renders it unnecessary to spend time considering whether there was a ratification by the corporation or not, in respect to which counsel for both sides argued at considerable length in the briefs.

The only remaining question is, Were the defendants stock-holders of the corporation at the time the contract was made? It is alleged, in effect, that they were such stockholders, and on that the case turns.  On the subject of when a person may be said to be a stockholder in a corporation there is some conflict of opinion, but it is nowhere held that one can become such without being the owner or holder of stock or a subscriber therefor.  If the defendants were stockholders, they were such by virtue of having merely signed a paper which bound them to take stock in a corporation to be formed.  To be sure, the paper signed is in the form of a present subscription for stock, but all, or nearly all, the signers subscribed before the articles of organization were filed.  All signed long before there was any corporate organization, and the paper expressly states that the subscribers subscribed for stock in a corporation to be formed.  At most, it can only be said to have constituted an agreement to take stock.  The mere signing of the paper did not make the signers stockholders.  Much learning has been displayed respecting this subject by the text writers, and many adjudications exist in the courts of this country respecting just what the *status* is of a mere signer to such a subscription paper under such circumstances.  The subject is treated in article 21 of Thompson's Commentary on the Law of Corporations, under the title "The Contract of Subscription," commencing with sec. 1136.  But all the authorities substantially agree that, until the subscription paper has been presented to the corporation and assented to by it, the signers are not stockholders.  In *Minneapolis Threshing Machine Co. v. Davis*, 40 Minn. 110, the character of such a subscription paper was considered, and the conclusion reached that it was a binding contract between the subscribers to take stock and to pay therefor according to their respective subscriptions, and hence that they became stockholders at the instant such subscriptions were accepted by the corporation.  Says Mr. Justice

STONE on the same subject, in *Knox v. Childersburg Land Co.* 86 Ala. 180: "Such an agreement is in no sense a subscription to stock. Something more must be done before it can be affirmed that the subscription is a complete contract." To the same effect are *Athol Music Hall Co. v. Carey,* 116 Mass. 473; *Ashuelot B. & S. Co. v. Hoit,* 56 N. H. 548; *Buffalo & J. R. Co. v. Gifford,* 87 N. Y. 294. In Waterman, Corp. (sec. 177), it is stated, in effect, that if a number of persons mutually agree to become stockholders in a corporation to be formed, their agreement is in the nature of a continuing offer, which offer, by acceptance, consummates the contract of membership and makes the subscribers stockholders. In *McClure v. P. F. R. Co.* 90 Pa. St. 269, the form of the subscription paper was that of a present subscription for the stock of an existing corporation. The court held, in effect, that the subscribers became stockholders from the instant of the acceptance of a subscription by the corporation, not before. In *Buffalo & J. R. Co. v. Gifford, supra,* the form of the subscription was as follows: "We, the undersigned, in consideration of, and for the purpose of, becoming stockholders in the Buffalo & Jamestown Railroad Company, do hereby subscribe and take the number of shares, of $100 each share, of the capital stock of said company set opposite our respective names, and agree to pay therefor," etc. The subscriptions were obtained by one who afterwards became a director of the corporation so organized. The subscription paper was delivered to and accepted by the corporation, and the subscribers participated as such in the business of the corporation. The court held that the subscription was not valid to make the subscribers stockholders in the first instance, but that they became such by the acceptance of the subscription by the corporation. Decisions along this line could be multiplied at great length, but suffice it to say that no well-considered case can be found which holds that a mere agreement to subscribe for, or a subscription to, the stock of

a corporation to be formed, will constitute the subscribers stockholders, and as all of the defendants were so circumstanced September 27, 1893, they were not stockholders existing at the date the contract was made, upon which this action depends, hence not liable thereon under the provisions of sec. 1773, R. S.

*By the Court.*— The judgment of the superior court is affirmed.