FARM LANDS DEVELOPMENT COMPANY, Appellee, v. JOHN H. TAFT, Appellant.

**CORPORATIONS:** Stock—Conditional Subscriptions. A subscription to corporate stock, to be lawfully authorized and issued in the future on the happening of certain events, is, on the happening of such events, enforcible, and especially so when the subscription in question is one of a series of mutually dependent subscriptions on which other subscribers and the corporation have materially relied.

*Appeal from Cedar Rapids Superior Court.*—A. B. CLARK,

Judge.

FEBRUARY 7, 1922.

REHEARING DENIED SEPTEMBER 30, 1922.

ACTION to recover on a subscription to the capital stock of the plaintiff corporation. Jury was waived and cause tried to the court. Judgment was entered in favor of the plaintiff. Defendant appeals.—*Affirmed.*

*Hughes, Sutherland, Taylor & O'Brien,* for appellant.

*C. F. Clark* and *Trewin, Simmons & Trewin,* for appellee.

DE GRAFF, J.:—Plaintiff in its amended and substituted petition alleged the execution by the defendant of the original stock subscription in the sum of $5,000 to the plaintiff corporation and the execution of a second stock subscription in the sum of $1,750 which is the basis of this suit. It further alleged by way of estoppel plaintiff's reliance upon the stock subscriptions so made by defendant and other subscribers, the investment of money, the assumption of liabilities, and the payment of dividends. Prayer for judgment against the defendant was made

in the sum of $1,750, the same being the par value of 17½ shares of stock issued and tendered to defendant under his second stock subscription. Defendant in answer pleaded (1) that the capital stock having been subscribed and issued when the second subscription was signed, and the corporation having no power to issue the additional stock at that time, the subscription was void; (2) that the subscription lacked mutuality in that the plaintiff corporation did not and could not agree to deliver the additional stock to the defendant, or to any specific person, the law requiring the company to offer it to the stockholders of record at the time the articles were amended and the new stock authorized, and that this alleged subscription was, therefore, void for lack of mutuality in the contract; (3) that even if the alleged subscription were treated as a continuing offer to take the stock, as claimed by the plaintiff, it was withdrawn before the performance on the part of the plaintiff.

It appears that in June 1911 the Tuttle Land Company held an option to purchase 20,000 acres of Canada land which they were proposing to sell at retail. Twenty citizens and residents of Cedar Rapids, including defendant, being desirous of participating in the profit that might result from the handling of this land entered into an agreement wherein it is recited that the parties were mutually agreeing to handle the sale of the real estate by a syndicate or corporation as might thereafter be determined. The parties thereto subscribed various amounts aggregating $80,000 which included $5,000 subscribed by defendant. It was stipulated that the subscribers "mutually agreed to take stock in said corporation or interest in said syndicate for said respective amounts and to pay our proportionate share of such additional amounts as may be necessary to be paid on said lands."

The agreement further provided for a purchase of the land at wholesale at $19 per acre and a sale in parcels to the Tuttle Land Company at $21 per acre under a contract with said company for the resale of said lands running until December 1st 1919, Tuttle to purchase at that time 2,000 acres of all lands that remained unsold. The agreement and subscription list were signed by all the parties in June 1911 and the amounts subscribed were payable July 1st, 1911. The subscribers de-

cided that the form of organization should be a corporation and the plaintiff corporation was organized.

All contracts and necessary papers were drafted and executed as of July 1, and the articles of corporation bore date of July 1, 1911 although not fully executed and filed until July 7. At this time it was further determined that each of the subscribers should ratify the foregoing agreement to pay his proportionate share of such additional amounts as might be necessary to be raised by executing a stock subscription in words and figures as follows: "For value received, and in consideration of stock subscription heretofore made by me and agreements similar to this now executed by all the other stockholders of the Farm Lands Development Company (Inc.), I hereby subscribe for 187½ additional shares of the par value of one hundred dollars ($100) each of the capital stock of the said Farm Lands Development Company, said additional stock to be issued and sold at par whenever and in such amounts as the board of directors of said corporation may decide, the undersigned to take of each additional issue such proportion as his present holding of stock in said corporation now bears to the total authorized capital stock of said corporation, not exceeding, however, the number of shares hereinbefore stated; and I hereby agree to pay for said additional shares, or any pro-rata part thereof, within thirty (30) days after the passing of a resolution of the board of directors of said company authorizing the issuance of said additional stock.

This subscription is made by reason of the assignment to the Farm Lands Development Company by C. E. Tuttle of certain contracts executed by J. H. Haslam and The Haslam Land & Investment Company, Ltd., et al., with him on July 1, 1911, for the purchase of 20,000 acres of land in Saskatchewan at $19 per acre upon which said C. E. Tuttle has paid $80,000 and has agreed to pay $20,000 December 1, 1911, and the remainder in five equal annual payments on the first days of December in the year 1912, 1913, 1914, 1915, and 1916, and this subscription shall only be binding in case the board of directors of said Farm Lands Development Company decide that it is necessary to issue such additional stock to raise a fund from which to make said deferred payments, in case the said C. E. Tuttle defaults

in making them, or to otherwise protect and safeguard the interests of said corporation in said contract. Signed this 1st day of July, 1911. John H. Taft.''

Each of the original subscribers signed a similar subscription. It further appears that the land company sold about 8,000 acres during the years 1911 to 13 inclusive, and relying upon the additional stock subscriptions, the plaintiff corporation instead of creating a sinking fund distributed among the original stockholders, including defendant, during the years 1911 and 1912 dividends aggregating 26 per cent, or a total to all stockholders in the sum of $28,800. It was discovered that the receipts from sales in 1913 were not sufficient to pay the installment of $56,000 due the selling company on the land contract, and it became necessary in order to prevent a forfeiture of the contract to secure additional money. The board of directors and stockholders passed the necessary resolutions declaring the necessity to sell additional stock and to amend the articles of incorporation and increase the authorized capital stock. This amendment was adopted January 27, 1914 and recorded February 4, 1914.

Defendant Taft prior to this official action had transferred his original stock to one Nissen as collateral to secure a loan. The plaintiff company not being advised as to the true relations between Taft and Nissen notified both parties of the action taken by the corporation, and four days subsequent to the notice to Taft the latter wrote the plaintiff accepting service of notice but stated that he had no interest in the stock at that time and ''if they [corporation] increased the same, they will have to do so on their own account, as neither the writer nor Mr. Nissen wished to do so.''

The evidence shows that all the stockholders of the plaintiff corporation, except Taft, took their pro-rata share of the additional stock under the agreement at that time. Under this state of facts is the defendant Taft liable under his agreement and the additional stock subscription signed by him?

As a general rule subscriptions in excess of the amount limited as the capital stock of a corporation are void, and no liability thereon attaches to the subscriber. Is the subscription for additional capital stock to be viewed as an over-subscription?

If an affirmative answer is made to this question then the defendant is not liable. A subscription to the capital stock of a corporation is a contract between the corporation and the subscribers and its formation and validity are governed by the same principles as any other contract.

If an over-subscription is made to an authorized issue of capital stock it cannot be validated on the principle of estoppel. There must be mutuality of obligation. The original capital stock in the plaintiff corporation was issued and paid for. The additional stock that was contemplated and later sanctioned formed no part whatsoever of the original issue. The corporation was not limited in its power to issue stock by any provision of our statute or by its charter. All corporations under our law are organized under a general law, and no limitation is imposed upon the amount of capital which may be authorized. The amount of capital stock forms no part of our organic law but is made a matter of corporate regulation under the statute.

The agreements in evidence conclusively show that it was the intention of the parties interested to amend the articles of incorporation when necessary to issue "additional stock." The articles themselves were so amended and the stock so authorized was issued. This is not a case involving subscriptions or agreements to take stock already authorized and in existence, and in excess of the authority of the corporation.

It must be conceded that the additional stock when tendered to the defendant was legal stock and in this particular the instant case is distinguishable from the authorities relied upon by appellant. *Lincoln v. New Orleans Exp. Co.*, 45 La. 729 (12 So. 937); *Cartwright v. Dickinson*, 88 Tenn. 476 (12 S. W. 1030); *Anthony v. Household Sewing Machine Co.*, 16 R. I. 571; *Lathrop v. Kneeland*, 46 Barb. (N. Y.) 432.

The case of *Peck v. Elliott*, 79 Fed. 10 (38 L. R. A. 616) differentiates the rule as applied to corporations in the issuance of capital stock and bases the distinction in the organic law of the corporation. It is said: Textbooks contain the statement that " 'a corporation has no implied authority to alter the amount of its capital stock where the charter has definitely fixed it at a certain sum.' * * * [The above] are all cases where the amount of the capital was definitely fixed in the constitution of

the company. The case before us is that of an incorporation under a general law which does not impose any limitation whatever upon the capital which incorporators may venture in their business. * * * If a corporation is given power to determine upon its capital stock as a matter of internal regulation, it is difficult to see why one determination is the exhaustion of the power.''

In the instant case these stockholders acting as cautious business men and with due regard to future contingencies and the vicissitudes of their business venture made provision for a condition which did happen. What was done was required to be done to ''safeguard the interests of the corporation.''

Subscriptions to stock may be made upon a condition precedent and when made constitute a contract between the several subscribers which cannot be withdrawn or revoked by anyone without the acquiescence of all. It is a continuing offer—a conditional subscription. Such subscription when the conditions have been complied with are binding upon the parties to the same extent as if the contract had been absolute and unconditional. *Cravens v. Eagle Cotton Mills Co.* 120 Ind. 6 (16 Am. St. Rep. 298) ; *Armstrong v. Karshner,* 47 O. St. 276 (24 N. E. 897) ; *Richelieu Hotel Co. v. International Mil. Enc. Co.,* 140 Ill. 248 ; *Minneapolis Threshing Mach. Co. v. Davis,* 40 Minn. 110 ; *Lake Ontario, A. & N. Y. R. Co. v. Mason* 16 N. Y. 451 ; 14 Corpus Juris 535.

The plaintiff herein accepted the additional stock subscriptions and acted upon them in making the purchase of the Canadian land. It made payments thereon. It paid dividends to the stockholders in substantial amounts. In brief the corporation was induced by these very stock subscriptions to invest its money. To permit the defendant to relieve himself from the liability sought to be imposed would constitute a fraud on the other subscribers and upon the corporation. All the conditions recited in the additional subscription were met, and it must be said that the agreement was based upon a sufficient consideration. It is not open to revocation any more than any other valid contract. The other subscribers had an interest in the execution and in the performance thereof. These additional subscriptions were designed and had one common object, and bound all

who signed them to like duties and obligations. This action was instituted to enforce defendant's agreement to pay, and the conclusion of this court is that he must pay. The evidence was amply sufficient to warrant the finding made by the trial court on the facts and the finding made by the court, the jury having been waived, has the same force and effect as a verdict of the jury. The judgment of the lower court is correct and is— *Affirmed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.