ANNE S. KENNEDY, APPELLANT, V. CENTRAL POWER COMPANY, APPELLEE.

FILED SEPTEMBER 20, 1935. No. 29292.

Tyler & Peterson and Raymond Frerichs, for appellant.

William H. Pitzer, Marshall Pitzer and William Suhr, contra.

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ., and RYAN, District Judge.

PAINE, J.

This was an action based on an oral contract seeking to recover the face amount paid for nine shares of 6 per cent. cumulative stock in the defendant company, repayment thereof being refused. At the close of all the evidence, the defendant's motion to discharge the jury and dismiss the case was sustained. Plaintiff appeals.

The plaintiff charges that the court erred in sustaining the motion to discharge the jury and dismiss plaintiff's action, because there was sufficient evidence to sustain a verdict in said cause, and the order of court discharging the jury was contrary to law.

The plaintiff purchased nine shares of preferred stock in the Central Power Company, defendant, from Miss Mary Carmody, its cashier in the office of the company at Nebraska City, Nebraska. In this office Miss Carmody worked under C. L. Paullin, who was its local manager, and was also a vice-president. The headquarters of this company was located in Grand Island, Nebraska, where the president and some of the other officers resided, and the company furnished electricity to many towns in the state of Nebraska. The defendant company sold its 6 per cent. cumulative preferred stock at its Grand Island office, the stock certificates in evidence being signed by C. W. Amidon, its president, and V. M. Johnson, its secretary, both residing in Grand Island. The sale of such stock was promoted through newspaper advertising, and the first witness was Arthur Sweet, managing editor of the Nebraska Daily News Press, and five advertisements were

received in evidence, which were published in said paper. Two of these advertisements carried a line near the bottom of the advertisement reading, "Ask any employee for full information."

The plaintiff testified that she had known C. L. Paullin, the Nebraska City manager, since he had resided there, and had known Mary Carmody for 15 or 20 years; in fact, had known her when she was an employee of the predecessor company. Plaintiff was asked to state the substance of the conversation with Miss Carmody, and her answer, as set out in interrogatory No. 76, is as follows: "Well, I went in to pay my bill and after I paid it and all she asked me if I was interested in buying some Central Power stock and I told her I didn't have very much money for anything like that and I wasn't interested I didn't think and we talked it over and she said, it was a good investment and paid six per cent. interest and I asked her if I would buy it if I could get the money back when I wanted it and she said, 'Yes.'"

At the beginning of the trial, the plaintiff tendered the two certificates for eight shares and one share, respectively, into court, the same being indorsed in blank in lead-pencil by the plaintiff on the back, in the presence of a witness, and demanded that defendant pay to the clerk of the court for the benefit of the plaintiff the amount of $900, together with interest at 6 per cent. from the 21st day of July, 1933, being the day upon which demand for repayment was made. Such tender was refused for reasons set out in the defendant's answer.

The defendant did not move for a directed verdict at the close of plaintiff's evidence, but called several witnesses, and also introduced in evidence a certified copy of the articles of incorporation of the Central Power Company, together with amendment thereto, in which articles of incorporation, in section 25 of paragraph 3, it is provided that said company may sell stock, bonds, or other obligations of the company, at such time and upon such terms and conditions as the board of directors shall determine,

and in the tenth paragraph it is provided that the board of directors may in its discretion use and apply any surplus or accumulated profits in acquiring bonds or other obligations or shares of the capital stock of the corporation to such an extent and in such manner and upon such terms as the board of directors shall deem expedient, "provided that no such funds or property shall be used for the purchase of its own shares of capital stock when such use would cause any impairment of the capital of the corporation; but shares of capital stock when acquired may, from time to time, successively be resold and repurchased."

"Articles of incorporation and the statutes relating thereto are by construction material parts of the contract executed when a person becomes a stockholder by purchasing stock of the corporation." *Allen v. White,* 103 Neb. 256. See *Luikart v. Paine,* 126 Neb. 251.

"One who subscribes to stock is not a stockholder until the subscription is presented to and accepted by the corporation." *Badger Paper Co. v. Rose,* 70 N. W. 302 (95 Wis. 145).

"A certificate of preferred stock, issued by a corporation, is evidence of the holder's title to shares of stock. The terms and provisions of such certificate and of the articles of incorporation, together with the general law and the by-laws of the corporation, in force at the time, all enter into and together evidence the contract between the corporation and the stockholder." *Miller v. M. E. Smith Building Co.,* 118 Neb. 5.

The defendant's witness, Mary Carmody, testified that early in January, 1931, the plaintiff came to the office and inquired if there was any more Central Power Company's stock for sale. She said she was interested in the stock. Miss Carmody asked her if she would like to have it explained, and plaintiff said she did not have time just then, but that she had some money outstanding that was not bringing in much interest, which she wanted to reinvest in something that would bring in more dividends, and she said she would come in later. Miss Carmody testified that

she did not open the conversation about the sale of stock, but that the plaintiff brought up the matter. Miss Carmody testified that the plaintiff came back on January 16, 1931, and bought eight shares of stock, and paid $800 and signed the regular printed agreement to purchase eight shares of 6 per cent. cumulative preferred stock, for which she paid $800 in cash, said agreement being exhibit No. 7; that, after plaintiff had signed the regular agreement to purchase stock, she took the same to the manager, C. L. Paullin, who approved the same. Miss Carmody denied that she told the plaintiff she could have her money back at any time she wanted it, and testified that all that was said by her on that subject was as set out in interrogatory No. 697: "She asked if she should want her money how long it would take to get it and I told her that the company didn't care to issue stock unless it would be a permanent investment, and she said, she wouldn't care to take her money or to get her money unless she needed it, and I told her—I answered her by saying, that at the present time, we were able to get returns in about four to five weeks, and I asked her if she understood stock transactions and she assured me that she did—that she had stock in another company. Q. 698. When you say 'returns,' what do you mean by that? A. I meant returns; we had to send her request in to Grand Island, as the stock transactions were all handled there."

Plaintiff insists that Miss Carmody promised the plaintiff that she could get her money back at any time she wanted it if she would purchase this stock. Plaintiff contends that, if Miss Carmody had no actual authority, she certainly had ostensible authority to make such an offer. Plaintiff admits that there is nothing in the agreement to purchase stock, signed by the plaintiff, about a contemporaneous oral agreement, and plaintiff admits that there is no fraud pleaded or proved in the case.

The defendant on its part claims that the president, secretary, and all of the records of this corporation are in Grand Island, Nebraska; that Miss Carmody is not a stock

salesman at all, and that the legal relations between the parties to this suit were initiated by a printed and written application to purchase stock, signed by the plaintiff, and that the relation between a stockholder and his company is always a contractual relation, and that a stock subscription agreement signed to purchase stock is not the sole evidence of the relation between the stockholder and the corporation, but the legal relation embraces also the articles of incorporation of the company, and on the back of the certificates issued to the plaintiff appears in fine print some of such provisions, showing the power of the corporation, on the authority of its board of directors, to redeem or retire preferred stock.  In the case at bar the evidence clearly shows that this is the only sale of stock that Miss Carmody ever made.

In *Wand v. Blum,* 309 Pa. St. 551, an agreement made at the time of purchase of stock set out the terms of payment and provided that, should the employee leave the employ of the corporation, he agreed to resell his shares of stock to the seller at the price paid for same.  It is held that this paragraph of this agreement creates no obligation whatever upon the corporation's part to buy it.  It is simply an option to repurchase if the corporation desires.

Again, a corporation has no authority to accept subscriptions to its capital stock on special terms, where the terms are such as to constitute a fraud on other subscribers, and such stipulations are void, though the subscription may be enforced by the corporation.  *Cahall v. Lofland,* 12 Del. Ch. 299; *Hewitt v. Linnhaven Orchard Co.,* 90 Or. 1.

Plaintiff held this stock for several years, making no effort to force a repurchase of it so long as the dividends were being paid regularly; when they could not pay them, then she brought action on her alleged oral contract with Miss Carmody.  It must have been evident to the plaintiff that accepting the stock subscription blank, properly signed, was the limit of this young lady's authority; for it was within the knowledge of the plaintiff that she was a mere clerk in the Nebraska City office.  The unlimited

promise to repurchase this stock, which the plaintiff claims was offered to her by Miss Carmody, would simply make the Central Power Company a depository for money, which money must be returned to the stockholder at any time upon demand, with 6 per cent. interest. Such a contract would make the defendant company obligated to repay money to a stockholder in exactly the same way that a bank is required to pay its demand deposits. It is not contended by the defendant that such a contract could not have been made by the corporation through authority of its board of directors; there is no proof in the record showing that any such promise was authorized. The attempt to bind the defendant by an indefinite, oral promise to repurchase the stock was clearly outside the limits of the subscription contract signed by the plaintiff.

In *Schuster v. North American Hotel Co.*, 106 Neb. 672, the second opinion filed after reargument, which opinion was released December 21, 1921, provides that, where a written contract for subscription to stock is on its face a complete contract, such company is not bound by an oral agreement of an agent who had no authority to make such agreement, and while such agreement might fix a liability for fraud upon the agent, it would not fix responsibility upon the company.

The rule appears to be that mere opinions, estimates, or promissory statements as to the future, though unfounded, will not invalidate a transaction entered into in reliance thereon. 7 R. C. L. 239, sec. 212.

In the recent Restatement, Law of Contracts, sec. 32, we find: "An offer must be so definite in its terms, or require such definite terms in its acceptance, that the promises and performances to be rendered by each party are reasonably certain." The evidence in this case simply shows that the plaintiff was planning to invest her money permanently, but that in case of some emergency arising she wanted to know what method she could follow to cash in her stock, but there were no definite terms made, and nothing certain promised in the future in relation thereto, even on the part

of Miss Carmody, to say nothing of the fact that it was never brought to the attention of the corporation which it is sought to hold.

The plaintiff relies upon the statement in the advertisement, "Ask any employee for full information." This corporation needed capital for its expanding business, and any employee could tell where a stock subscription blank could be found on which a stock subscription could be sent in, but there is nothing in this statement in the advertising which would give any employee of the company the right to vary the terms set out on the subscription form which the plaintiff signed for the stock. The making of special terms outside of the regular subscription provisions was beyond the power of the ordinary employee to do, for the articles of incorporation, filed December 26, 1914, provided that stock could only be sold at such times and upon such terms as the board of directors might determine. There was also the provision that no shares of its capital stock could be repurchased by the company under any circumstances when such use of its funds would cause any impairment of the capital of the corporation, and all of these provisions of the articles of incorporation are considered material parts of the contract that a subscriber enters into in buying stock in the company.

If the plaintiff desired to be granted special terms by the corporation in her purchase of this stock, there was plenty of room above her signature for her to write in that she demanded that the corporation should agree to repurchase her stock at any time that she desired, but she failed to make this desire known.

The law is that an offer to take back the stock is conditional, and the purchaser must show compliance with all of the conditions precedent on her part. She must return, or offer to return, the stock and the dividends received by her, unless under the terms of the contract she is entitled to retain them. 4 Fletcher, Cyclopedia of Corporations (Perm. ed.) 233, sec. 1546. In the same volume, at page 167, sec. 1500, it says: "Agents appointed to receive sub-

scriptions have such authority only as is conferred on them. As a rule, they have no authority to receive conditional subscriptions or subscriptions upon special terms, and, if they do so, the corporation is not bound unless it ratifies their act."

In the opinion of this court, considering the evidence in its most favorable light to the plaintiff, there was not sufficient evidence to establish the oral contract alleged by the plaintiff, and the clerk who received the application would not have been acting within the scope of her ostensible authority if she had made any such agreement to repurchase the stock, as alleged. The following cases are of interest in this connection: *Rhoades v. Banking, Trust & Mortgage Co.*, 125 Va. 320; *Cargill Commission Co. v. Swartwood*, 159 Minn. 1; *Farm Lands Development Co. v. Taft*, 194 Ia. 481; *Omaha Alfalfa Milling Co. v. Pinkham*, 105 Neb. 20; *Grone v. Economic Life Ins. Co.*, 80 Atl. (Del. Ch.) 809; *Brown v. Stroud & Co.*, 112 Neb. 210.

Therefore, the trial court was right in sustaining the motion to discharge the jury and dismiss the action, and the same is hereby

AFFIRMED.