LEIGHTON v. LEIGHTON LEA ASS'N et al.

(Supreme Court, Equity Term, Monroe County.  November 11, 1911.)

1. CORPORATIONS (§ 388*)—RIGHTS OF CREDITORS—ESTOPPEL.

One of whom a corporation, organized under Laws 1851, c. 122, bought land, giving her a purchase-money mortgage, is estopped to question the validity of its manner of doing business, adopted by it, as stated in its articles of association, whereby, when it deeded lots of the land to its members and they were paid for in full, they would hold them free and clear of the lien of the mortgage; she having acquiesced therein, taking money paid for the lots, and releasing them from the mortgage.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. § 388.*]

2. CORPORATIONS (§ 264*)—LIABILITY OF MEMBERS—ENFORCEMENT BY CREDITORS—LIMITATIONS.

As an association incorporated under Laws 1851, c. 122, could not recover of its members for unpaid stock subscriptions and dues, which had been due more than six years, its creditors cannot recover of them therefor when the statute of limitations is pleaded.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1091, 1092; Dec. Dig. § 264.*]

3. CORPORATIONS (§ 237*)—ULTRA VIRES LOAN—LIABILITY OF STOCKHOLDERS.

Under Laws 1851, c. 122, § 5, providing that a corporation formed under such act shall have power to borrow money for "temporary" purposes, for not more than "two" years, a loan consisting of a large purchase-money mortgage given by it, having 10 years to run, is ultra vires, which is a good defense for the shareholders sought to be held for the deficiency judgment on foreclosure; section 11, making them individually liable to its creditors for all debts contracted by it, applying only to debts it has power to contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 907–933; Dec. Dig. § 237.*]

4. CORPORATIONS (§ 460*)—POWER TO BORROW—"TEMPORARY PURPOSE."

That a corporation borrowing money gave its note therefor payable in 30 days justifies the conclusion that it borrowed for "temporary" purposes, for which alone, under Laws 1851, c. 122, § 5, it had power to borrow.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 460.*

For other definitions, see Words and Phrases, vol. 8, p. 6901.]

5. CORPORATIONS (§§ 252- 264*)—LIABILITY OF MEMBERS—ENFORCEMENT BY CREDITORS.

Though a corporation formed under Laws 1851, c. 122, was, under the definition of stock corporations, as amended by Laws 1895, c. 672, a nonstock corporation, when it gave a note, the holder thereof must exhaust his remedy against it before he can proceed against the shareholders on their liability therefor; so that limitations begin to run against his action against them only when execution on his judgment against it is returned unsatisfied.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1016–1023, 1084–1098; Dec. Dig. §§ 252, 264.*]

6. CORPORATIONS (§ 264*)—LIABILITY OF MEMBERS—ENFORCEMENT BY CREDITORS—LIMITATIONS.

A corporation organized under Laws 1851, c. 122, to accumulate a fund to purchase real estate and provide building lots and homesteads for its members, being by provision of Laws 1875, c. 564, under the control of the banking department, must be considered a moneyed corporation,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so that the three-year statute of limitations applies to an action by its creditors against its stockholders, after return unsatisfied of execution against it, to enforce their liability for its debts.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 264.*]

Action by William T. Leighton, on behalf of himself and all other creditors of the Leighton Lea Association, against such association and others. Judgment directed.

See, also, 130 N. Y. Supp. 935.

Burlew Hill, for plaintiff.

Heman W. Morris, Smith, De Graff & Castleman, E. A. Marsh, Charles M. Williams, Reed & Shutt, and others, for various defendants.

CLARK, J. The defendant, the Leighton Lea Association, a domestic corporation, was incorporated March 13, 1891, pursuant to chapter 122 of the Laws of 1851. It had an authorized capital of $120,000, and in its articles of incorporation it stated that it was organized "to accumulate a fund for the purchase of real estate, and make improvements thereon and to provide building lots or homesteads for its members."

It seemed to be the scheme of the incorporators to get title to a tract of land, and after dividing it into lots to convey them to the members as they would pay for them, and have any lands thus conveyed released from the lien of the mortgage which was given by the association on the tract of land purchased to secure part of the purchase price.

After its incorporation the association purchased of Kate B. Leighton, mother of this plaintiff, about 40 acres of land located in or near the city of Rochester, for $70,000, $10,000 being paid in cash, and the balance of the purchase price was secured by the association giving a bond and mortgage for $60,000 which was payable 10 years after the date of the mortgage, with semiannual interest. Payments were made on this mortgage from time to time by the association, and the time of payment was extended 18 months by Mrs. Leighton, and before the extended time had expired the association defaulted, whereupon an action to foreclose the mortgage was begun, and in due time a judgment of foreclosure and sale was obtained, and the property which had not theretofore been sold was sold in this mortgage foreclosure action for $12,496, but after paying taxes it left only $1,080.04 of the purchase price to be applied upon the mortgage debt, whereupon a deficiency judgment was rendered in favor of this plaintiff, who had become the owner of the mortgage, the amount of such deficiency judgment being $26,077.77, and that judgment was obtained July 27, 1903. Execution was thereupon issued on that deficiency judgment and it was returned unsatisfied.

On the 2d day of December, 1899, the Leighton Lea Association borrowed of one S. D. Bentley the sum of $180 and gave its note therefor, payable 30 days after date. When the note became due it was not paid, and the then owner of the note, J. A. Adlington, sued the association thereon, and such proceedings were had that on the 28th day of October, 1902, judgment was rendered on that note against

the association for $216.75; the action having been begun October 20, 1902. An execution was issued on that judgment, but was returned wholly unsatisfied, and the plaintiff has since become the owner of that judgment by assignment, and he now brings this action upon these two judgments, the deficiency judgment in the mortgage foreclosure action of $26,077.70, and the judgment of $216.75 recovered on the promissory note, made by the association as above stated, and plaintiff's contention is that as a creditor he has the same right that the association would have to bring the action against all the stockholders who had not paid their stock subscriptions in full, and also that he has a right to bring the action against all the stockholders and members of the association, including those who had paid in full and those who had not, to enforce a statutory liability as against all stockholders of the association to compel them to contribute to the payment of its debts.

Corporations of the character of the Leighton Lea Association, organized under chapter 122 of the Laws of 1851, have certain powers, which are plainly pointed out by statute, and they were incorporated in the articles of association heretofore quoted, and, by the act of 1851, corporations organized under it had authority to accumulate a fund for the purchase of real estate, and to pay off incumbrances thereon. They were given no express power to go out and purchase tracts of land and give long-term mortgages to secure the purchase price, and, so far as the mortgage foreclosure deficiency judgment is concerned, I think the plaintiff cannot recover against any of the defendants.

[1, 2] In the first place, all during the transaction of the giving of the mortgage by the association to Kate B. Leighton as executrix, down until the time it was foreclosed and the deficiency judgment obtained, she and her son, this plaintiff, perfectly understood the plans of the association, and that members were joining it with the understanding that, when lands were deeded to them and they were paid for in full, their deeds would be free and clear of any lien against said lands held by this plaintiff, or Kate B. Leighton, and they acquiesced in that manner of doing business, taking moneys that were paid for the lots and releasing them from the lien of the mortgage, and they are in no position to question the manner of doing business adopted by the association, as particularly stated in its articles of association, of all of which they had full knowledge. The mortgagee and her assigns and this plaintiff derived great benefit from the manner in which this association was transacting its business, and acquiesced in it, and they are clearly estopped from now bringing it into question. Not only is the plaintiff estopped from questioning the validity of the acts of the association in the manner in which it did business, but, when the statute of limitations was pleaded, plaintiff cannot recover for unpaid stock subscriptions and dues, where no payments had been made thereon within six years prior to the commencement of this action. The association could not recover for unpaid stock subscriptions that had been due more than six years when no payments had been made thereon, and, if the association was thus barred by the six-year statute of limitations, the plaintiff as its

creditor certainly would be, as Mr. Justice Sutherland well held on a former trial of this action.

But it seems to me that a greater difficulty than either the principle of estoppel or the six-year statute of limitations confronts the plaintiff.

[3] Section 5 of chapter 122 of the Laws of 1851, under which the Leighton Lea Association was incorporated, reads as follows:

"All corporations formed under this act shall have power to borrow money for temporary purposes not inconsistent with the objects of their organization; but no loan for such purposes shall have a. longer duration than two years, nor shall such indebtedness exceed at any one time one-fourth of the aggregate amount paid in and received."

Plaintiff seeks to recover here under section 11 of that act, which provides that:

"All shareholders of any association formed under this act shall be individually liable to the creditors of the association to an amount equal to the amount of stock held by them respectively for all debts contracted by such association."

And also under section 7 of that act, which provides for the liability of the holder of shares even though they had been redeemed.

But these two sections are not conclusive. The entire act must be considered, and section 5 above quoted distinctly states that the power of the association to borrow money is for temporary purposes, and that no such loan shall have a longer duration than two years. The loan in question, the $60,000 mortgage given by the association to plaintiff's mother, which mortgage was subsequently foreclosed with the resultant large deficiency judgment, now owned by plaintiff, and which he seeks to collect out of the stockholders of the association, was clearly not a loan for temporary purposes, and it ran for ten years instead of two as provided by statute, so the mortgage loan was one which the Leighton Lea Association had no right to make, and the doctrine of ultra vires must be deemed effectual as against plaintiff's contention here in so far as his claim under the deficiency judgment is concerned.

This association was the creature of the statute, with its powers clearly defined. There was no power given it by statute to incur any indebtedness, except such as is pointed out in section 5 of the act under which the association was incorporated, and it would not be proper to read into the statute an authority to incur any indebtedness other than that authorized by section 5, and that would be an indebtedness merely for temporary purposes, and that it should not have a duration of more than two years. This mortgage loan ran for ten years, and it was clearly not for temporary purposes. The association had no right to give any such mortgage. It had a right to accumulate a fund as authorized by statute, and invest that fund thus accumulated in real property; but when the association went out and purchased lands when it had no fund accumulated with which to pay for them, but instead gave a large purchase-money mortgage running ten years, as security for the payment, it exceeded its powers, for every act of a corporation of this character which is not authorized by the statute

creating it would be deemed to be prohibited. Morawetz on Corporations, § 648; Leighton v. Knapp (Sup.) 115 N. Y. Supp. 1040; Endlich on Building Ass'ns, §§ 175–299.

So it must be held that the doctrine of ultra vires applies, that the Leighton Lea Association had no right or authority to give the mortgage in question, and that the deficiency judgment obtained in the action brought to foreclose it is not an indebtedness for which shareholders of the association are liable. Under the statute they are made liable for certain debts, but only those that the association was authorized to incur. The association had the right to borrow money for temporary purposes, the loan to have a duration not exceeding two years, and on such an indebtedness of the association the shareholders would undoubtedly be individually liable; but they cannot be held liable on an indebtedness of the association which it had no right to incur, and the stockholders have the right to ask that the doctrine of ultra vires be applied to the end that they may not be made personally liable for an indebtedness incurred by the association represented by the bond and mortgage, which indebtedness the association had no power to incur, and being secured by a bond and mortgage which it had no right to make and execute. Close v. Potter, 155 N. Y. 145, 49 N. E. 686; Leighton v. Leighton Lea Association (Sup.) 130 N. Y. Supp. 935; Ward v. Joslin, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093.

The plaintiff seeks to enforce any claim that the Leighton Lea Association had against any of the defendants at the time the action was commenced, for unpaid stock subscriptions and dues, and have such amounts applied upon his deficiency judgment. I am compelled to disagree with plaintiff in this contention, for the reason that he has no right to collect unpaid subscriptions or dues, if there were any, and apply them on an indebtedness that the association had no right to incur, and, his deficiency judgment having come by way of such an indebtedness, he has no more right to collect unpaid dues on stock subscriptions and apply the moneys received on that indebtedness than he would have in the first instance to compel the various stockholders to contribute to the payment of this unlawful debt The indebtedness being one that the association had no power to contract, and plaintiff's judgment having come from such an indebtedness, he is not entitled to collect it out of any members or stockholders of the association, either by way of statutory or common-law liability, so I think, as to plaintiff's first cause of action based upon the deficiency judgment above referred to, he is precluded from recovering, not only because he is estopped from questioning the manner in which the association conducted its business, at all times with his full knowledge and consent, but also because he is seeking to enforce a liability against the shareholders of the association under an indebtedness which it never had a right to incur.

It therefore must be held that as to the first cause of action under the deficiency judgment plaintiff's complaint must be dismissed as to each and every defendant.

[4] As to plaintiff's second cause of action, wherein he seeks to have the members of the association contribute to the payment of his claim under the promissory note judgment, he is in a better position to ask for relief, for that was an indebtedness clearly within the power of the association to contract. The association borrowed money and gave its note therefor payable in 30 days, and that very fact justifies the conclusion that the loan was for temporary purposes.

[5] At the time this note was given, the amendment to the stock corporation law (Laws 1895, c. 672, § 3, subdiv. 2) was in effect. Under the stock corporation law (Laws 1890, c. 563), a stock corporation was defined as a corporation having a capital stock divided into shares, but under the amendment of 1895 (Laws 1895, c. 672) the stock corporation law was amended so that the definition of a stock corporation read as follows:

"A stock corporation is a corporation having a capital stock divided into shares, and which is authorized by law to distribute to the holders thereof dividends or shares of the surplus profits of the corporation. A corporation is not a stock corporation because of having issued certificates called certificates of stock, but which are in fact merely certificates of membership, and which is not authorized by law to distribute to its members any dividends or share of profits arising from the operations of the corporation."

That amendment had been passed several years previously to the date of the Adlington note in question and was in effect when that note was given, and I am bound to follow the conclusions of the Appellate Division in this department (Leighton v. Leighton Lea Association et al., 130 N. Y. Supp. 935), where in an opinion Mr. Justice Kruse, writing for the court, says:

"I am of the opinion that, as regards the promissory note judgment, the association must be classed as a nonstock corporation."

That being so, the plaintiff was right in not bringing his action against stockholders until the judgment on the note against the corporation had been recovered and an execution thereon had been returned unsatisfied. He was obliged first to exhaust his remedy against the association, and then proceed against the stockholders. National Bank v. Dillingham, 147 N. Y. 603, 42 N. E. 338, 49 Am. St. Rep. 692.

The statute of limitations, in so far as the promissory note judgment was concerned, did not begin to run until the execution was returned unsatisfied, and that was the 13th day of August, 1906.

[6] The Leighton Lea Association, as well as all corporations organized under the act of 1851, above referred to, was under the control of the banking department (Laws 1875, c. 564), and must be deemed to have been a moneyed corporation, and the three-year statute of limitations would apply, and as this action was concededly brought within three years after the return of the execution, on the promissory note judgment, the action in that regard must be deemed to have been brought seasonably.

Inasmuch as the promissory note indebtedness was for temporary purposes only and had a duration of less than two years, to wit, 30

days, it was an indebtedness which the association had a right to incur. Laws 1851, c. 122, § 5.

It must be held that all of the defendants who were stockholders in the association at the time that indebtedness was incurred—that is, at the time the note was executed—are individually liable for the judgment recovered on that promissory note, including interest thereon, but that indebtedness should be apportioned ratably among such members in proportion to the number of shares held by each, but not exceeding the par value of the stock, on the basis of $600 per share.

Let judgment be entered accordingly.