E. H. LUIKART, RECEIVER, APPELLANT, V. PAUL JONES, SR., ET AL., APPELLEES.

293 N. W. 346

FILED JULY 19, 1940. No. 30862.

*F. C. Radke* and *Leon L. Hines,* for appellant.

*Arthur E. Perry, Perry, Van Pelt & Marti, Butler, James & McCarl* and *Victor Westermark, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an action to recover double liability from stockholders of the Bank of Benkelman by the receiver of that bank, as formerly provided by section 7, art. XII of the Constitution, which was repealed November 8, 1938. After trial the action was dismissed as to the defendants, and they were allowed to go hence without day, from which plaintiff appealed.

The plaintiff's amended petition, filed December 3, 1938, alleges that the Bank of Benkelman was organized September 1, 1887, and given charter No. 38. On March 17, 1932, the bank having been adjudged insolvent, E. H. Luikart, plaintiff, was appointed receiver, and on March 18, 1938, it was adjudged that the bank owed creditors $164,164.10. On May 21, 1938, the receiver reported that he had completed liquidation of the bank, and that the deficiency due to its creditors amounted to $138,201.58, and that there is due from each and every stockholder their double liability; that defendants Paul Jones, Sr., and Robert E. Moore owned 70 and 10 shares of stock respectively, and prayed for an accounting and judgment for the amount due from each of said stockholders.

Paul Jones, Sr., filed answer, setting out that on January 14, 1933, he was adjudged a bankrupt in the McCook division of the United States district court for Nebraska, and on April 26, 1933, he was discharged as a bankrupt; that the causes of action set forth in plaintiff's petition accrued prior to the adjudication in bankruptcy, and are among the debts and claims from which the defendant was discharged as a bankrupt.

Plaintiff files reply, admitting the bankruptcy proceedings, and denying all other allegations, and charges that the claim against the defendant on the ownership of 70

shares of stock in said bank was entirely contingent, and not a provable claim in bankruptcy, as the deficiency was judicially determined by the court on May 21, 1938, and that the defendant has not been discharged from the liability.

Robert E. Moore for answer alleged that he was adjudged bankrupt in the McCook division of the United States district court for the district of Nebraska on June 6, 1935, and on the 14th day of February, 1936, he was discharged as a bankrupt, and that the debts referred to in plaintiff's petition for a double liability on his shares of bank stock are among the debts from which he was so discharged by the federal court.

After trial the court held that the defense of bankruptcy, as pleaded in the answers of the defendants, was a good defense to plaintiff's cause of action, and dismissed plaintiff's petition as to each of the bankrupts.

The plaintiff assigns as errors that the judgment of the district court is contrary to the evidence and contrary to law, and erred in finding that, when the defendants were discharged in bankruptcy, the plaintiff's claim was then a provable claim, and was discharged by said bankruptcy proceedings.

The sole question involved is, whether a stockholder of a state bank who goes through bankruptcy some years after the state bank in which he holds stock has been adjudged insolvent, but before there has been a judicial determination as to the exact amount for which each stockholder is liable under the constitutional double liability clause, is released from his obligation as a stockholder to pay the double liability.

The discharge in bankruptcy means the release of a bankrupt from all his debts which are provable, including a fixed liability, absolutely owing, whether then payable or not, and debts founded upon a contract, express or implied. 7 Remington, Bankruptcy, sec. 3516.

In a case involving the California banking law, it was held that assessment made after filing of petition in bank-

ruptcy could not be rejected on the ground that it was too indefinite and remote a contingency to constitute a debt at the time of filing the petition. "The contingencies of liability upon the assessment of the stock by the superintendent of banks are no more remote, uncertain, or unlikely than the nonpayment of commercial paper or the nonperformance of a guaranteed obligation. * * * We, therefore, hold that the obligation of the stockholder of this insolvent bank to pay to the superintendent of banks the moneys to discharge the bank's creditors is a debt 'founded upon a contract' as that term is used in the bankruptcy statute." *Erickson v. Richardson* (1936) (9 C. C. A.) 86 Fed.. (2d) 963.

"Stockholders' double liability in banking corporations is contractual obligation and by construction constitutional provisions in effect at the time of purchase of corporate stock are material parts thereof." *Luikart v. Paine,* 126 Neb. 251, 253 N. W. 86.

Counsel for the receiver of the Bank of Benkelman insist that contingent claims are not provable as debts in bankruptcy, and that a contingent claim is one where the liability depends on some future event which may or may not happen, and that a bank stockholder's liability is unliquidated until the amount is fixed, and must be liquidated before it can be provable, and that a discharge in bankruptcy does not operate as a release therefrom.

There is no question but that authorities may be found on both sides, for in the receiver's reply brief he cites 6 Am. Jur. 582, sec. 120, reading as follows: "A stockholder's liability which is unliquidated or contingent, or the amount of which is not fixed, is not a debt provable in the stockholder's bankruptcy proceedings. To be provable it must first be liquidated and ascertained within the time allowed for proving claims."

But in examining 8 C. J. S. 1263, sec. 404, it is said: "Unless the contingency or uncertainty is so great as to prevent the claim from being susceptible of liquidation, a claim or demand is not necessarily unprovable because it is

contingent at the time of the filing of the petition, if it can be brought within some provision or subdivision of Bankruptcy Act sec. 63a which contains no express requirement that the claims provable thereunder be a fixed and absolute liability of the bankrupt at the time of the petition."

Referring now to 8 C. J. S. 1258, sec. 399, it is said: "The bankrupt's liability as a stockholder may form the basis of a provable claim, under Bankruptcy Act sec. 63a (4) (11 U. S. C. A. sec. 103 (a) (4) ), where the liability is regarded as being contractual in origin and nature and it is not too contingent or uncertain to be susceptible of liquidation."

The circuit court of appeals of the United States, in *Brown v. O'Keefe*, 85 Fed. (2d) 885, has held that claims based upon assessment against the bankrupt to enforce his statutory liability as a stockholder are provable in bankruptcy.

In Justice Cardozo's opinion in *Brown v. O'Keefe,* 300 U. S. 598, 57 S. Ct. 543, being the same case on appeal, it is said: "By the mandate of the statute (Bankruptcy Act sec. 63b; 11 U. S. C. sec. 103b) : 'Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against the estate.' The result is to invest the court with a discretionary power that can be fitted to the needs of varying situations. *Maynard v. Elliott,* 283 U. S. 273. *Cf. Foust v. Munson S. S. Lines,* 299 U. S. 77, 83. * * * Liquidation being possible, the claim is not defeated though there was uncertainty as to its amount at the filing of the petition. *Maynard v. Elliott, supra.* Yet even the amount was certain, if we are to credit the defendant's statement. By this it appears that long before the bankruptcy the necessity for an assessment to the amount of the par value of the shares had become obvious to the liquidating agent and indeed to all concerned. The facts are far removed from those in *Miller v. Irving Trust Co.,* 296 U. S. 256, where the claim had its origin in the covenants of a lease."

Years before these defendants filed their petitions in bankruptcy, the bank had been declared insolvent, and placed in the hands of a receiver, and his report had disclosed the amount of stock held by each stockholder, and the amount of the sum to be contributed by each to pay a 100 per cent. assessment on the shares of stock was capable of strict ascertainment. The receiver, being notified, had a right to file a contingent claim.

It has been said that all doubts will be resolved in favor of the provability of claims under section 63 of the bankruptcy law.

It is generally held that, while the provability of a claim in bankruptcy, irrespective of its inherent validity, is a question of federal law, the validity and enforceability of a claim for purposes of provability are determined by the local law. 8 C. J. S. 1228, sec. 390; *In re Estate of Bolton,* 121 Neb. 737, 238 N. W. 358.

It appears to this court that the district court for Dundy county was correct in holding that the discharge in bankruptcy of each of the defendants presented a good defense to the suit of the receiver, and the same should be affirmed.

We have now discussed the nonliability of stockholders Paul Jones, Sr., and Robert E. Moore, who availed themselves of the bankruptcy proceedings. We will now discuss the issues as affecting Herbert E. Gottschalk, Lee T. Hamilton and Samuel M. Ewing, three other stockholders. The amended petition of the receiver of the Bank of Benkelman relating to them shows that Gottschalk owned three shares, Hamilton ten shares, and Ewing ten shares, and the receiver asks for an accounting and judgment against each of them on their stock liability.

These three stockholders rely upon four defenses: (1) That the only indebtedness of the Bank of Benkelman upon which liability was asserted by the receiver was predicated upon an *ultra vires* and illegal contract, as to which the stockholders who were not a party to that contract were not liable; (2) that the contract between the Bank of Benkelman and the Farmers & Merchants State Bank of Benkel-

man, out of which the indebtedness was claimed to arise, disclosed that the exclusive liability for the payment of any deficiency of assets transferred and a promise to pay the liability assumed rested on the three stockholders who alone entered into the contract, to wit, Paul Jones, Sr., who owned 70 shares, G. J. Owens, who owned 66 2/3 shares, and E. L. Campbell, who owned 66 2/3 shares; at least, this was the primary obligation, and it is contended that the liability of stockholders other than these three was secondary, and the release of the three parties primarily liable by compromise and settlement released and discharged the defendants Gottschalk, Hamilton and Ewing; (3) that the proceedings for the receivership of the Bank of Benkelman were collusive and fraudulent as to these answering defendants; that at the time plaintiff was appointed receiver of the Bank of Benkelman he was also receiver of the Farmers & Merchants State Bank of Benkelman; that as receiver of said last-named bank the plaintiff had no other or greater rights than said bank which breached the contract of March 20, 1930, upon which liability is predicated; (4) that all of the assets of the Bank of Benkelman had not been legally exhausted, as certain tracts of real estate without the state of Nebraska had not been lawfully disposed of by the receiver.

On July 12, 1939, Judge Eldred entered a judgment finding generally in favor of the defendants Gottschalk, Hamilton and Ewing, and dismissed the cause of action as to said three defendants.

The evidence discloses that on March 20, 1930, three of the directors and stockholders of the Bank of Benkelman, without the knowledge or consent of the other directors and stockholders, entered into a contract transferring all of the assets of the Bank of Benkelman, in consideration of the assumption by the Farmers & Merchants State Bank of all the liabilities of the first-named bank. The deficiency of any assets to pay the liabilities assumed was guaranteed personally by three directors and stockholders who signed the contract, viz., Jones, Owens, and Campbell. The de-

fendant stockholders insist that there is no evidence to show that the Bank of Benkelman was facing insolvency on the date of this contract, for a receiver was not appointed for it until March 18, 1932, some two years after the contract and transfer of assets were made.

The state bank commissioner, George W. Woods, testified, after searching his records, that there was no written approval of the contract, although it was discussed with him, and if any approval was given it was over the telephone. Gottschalk, Ewing and Hamilton testified that they did not attend any stockholders' meeting, did not receive any notice of such meeting, and knew nothing at all about it before this contract was entered into.

The liability of stockholders is a contractual one, arising out of the payment for the stock subscription, the terms of the stock certificate, together with the provisions of the Constitution and laws relating thereto which are in force at the time. *Luikart v. Heelan*, 136 Neb. 492, 286 N. W. 780; *Kennedy v. Central Power Co.*, 129 Neb. 637, 262 N. W. 504.

This contract of March 20, 1930, provided for a note of $250,000 to be given to the Farmers & Merchants State Bank, in consideration of which they would pay off the depositors of the Bank of Benkelman. It is argued that this indebtedness exceeded the indebtedness allowed by the articles of incorporation and by-laws (Comp. St. 1929, sec. 8-136), and that the transfer of the assets of the Bank of Benkelman was made without the consent of the department of trade and commerce (Comp. St. 1929, sec. 8-160), and made for the purpose of voluntarily liquidating the Bank of Benkelman, contrary to the provisions of the statute governing the same (Comp. St. 1929, sec. 8-169).

If it be found that these acts took place in violation of the strict terms of the law, then the attempted liquidation would be *ultra vires,* and stockholders are not liable for unauthorized or *ultra vires* acts or debts of a bank, unless they have assented thereto, or estopped themselves from denying liability to the same. 9 C. J. S. 156, sec. 80.

It has been held that, when a stockholder is sued by virtue of his constitutional and statutory liability, he is liable only for indebtedness incurred in the transaction of the legal and contemplated business of the corporation, and it is pointed out that "One of the grounds on which the doctrine of *ultra vires* rests, is that the interest of the stockholders ought not to be subjected to such risks. Rights of stockholders must be considered as well as those of creditors, and they should not be held directly liable unless such liability was within their contract in legal contemplation." *Ward v. Joslin,* 186 U. S. 142, 22 S. Ct. 807.

The Constitution formerly provided (art. XII, sec. 7) that the stockholders of a bank should be individually liable to the amount of their respective shares for the bank's debts. This double liability of a bank stockholder imposed by the Constitution was a secondary and exceptional liability, which arose only by the contingency that the bank had become insolvent. It has been held that this double liability of bank stockholders was not an asset belonging to or asserted in behalf of the bank, but was an independent original remedy. *State v. Citizens State Bank,* 118 Neb. 337, 224 N. W. 868; *Assets Realization Co. v. Howard,* 70 Misc. 651, 127 N. Y. Supp. 798; *Leighton v. Leighton Lea Ass'n,* 74 Misc. 229, 131 N. Y. Supp. 561.

It was held that a contract by which a trust and savings bank transferred all its assets to a bank and trust company, which assumed all liabilities but which contract was not approved by the auditor of public accounts, as required by statute, was void, and therefore the bank and trust company was not a creditor within the constitutional provision relating to stockholder's liability, as the banks were without power to make the agreement. A bank has only the powers expressly granted, or necessarily implied from a specific grant. *Continental Illinois Nat. Bank & Trust Co. v. Peoples Trust & Savings Bank,* 366 Ill. 366, 9 N. E. (2d) 53.

In the case at bar, the contract provided in paragraph 6 that the Bank of Benkelman should deliver to the Farmers

& Merchants State Bank an agreement of persons owning at least 70 per cent. of its capital stock, ratifying and approving the execution of the contract and agreeing to carry out the same, and the three defendant stockholders were outside of the 70 per cent. who approved the same and guaranteed to carry it out.

The case which is most similar to the case at bar is a recent Illinois case, released in January of this year. To get the facts before us, we will examine the text of the opinion. The receiver of the State Bank of Orangeville brought action against John Babler and several other stockholders to enforce their constitutional liability as stockholders of the State Bank of Orangeville. The Peoples State Bank of Orangeville and the Orangeville State Bank were each doing a general banking business. The stockholders of the Orangeville State Bank, at a special stockholders' meeting, passed resolutions to liquidate their bank, and for the organization of a new bank to assume the liabilities of the Orangeville State Bank, provided the Peoples State Bank would pass a similar resolution.

In accordance with the resolution of liquidation passed by the two old banks, a new bank, called the State Bank of Orangeville, was duly organized and commenced business. All of said proceedings were duly authorized in writing by the auditor of public accounts. The Orangeville State Bank transferred to the new bank its bills receivable of $136,-689.57, indorsed without recourse, together with $168,426.-20 and its note for $27,077.80, which together made the amount of its deposit and bills payable liabilities. It was also alleged in the complaint that there still remains due and unpaid on said note more than $20,000. The defendants filed motion to dismiss on the ground that the resolutions for liquidation were void under the statutes of Illinois. The chancellor held that when the transactions took place there was only one method of voluntary liquidation of a state bank. That would be to distribute its assets, surrender its charter, and close up its business by depositing with the auditor of public accounts an amount equal to the whole

amount of debts and demands against it, and that the plan followed in having the State Bank of Orangeville liquidate the Orangeville State Bank was not the manner sanctioned by the banking act, and that such transactions were *ultra vires* and void.

It was held that, if there was a consolidation and not a liquidation, then the State Bank of Orangeville assumed the payment of the note along with the other bills payable and deposit liability of the Orangeville State Bank. This was not a dissolution, because the complaint alleges that the Orangeville State Bank continues to exist as a legal entity. It was held that the action of the new bank, the State Bank of Orangeville, in assuming the liability of the Orangeville State Bank, and in attempting to shift responsibility for its debts, was beyond the power conferred by the legislature, and precluded the appellant from recovering in this proceeding against its stockholders, and the decree for the defendant stockholders was therefore affirmed. *Albers v. Babler,* 303 Ill. App. 324, 25 N. E. (2d) 81.

The contract, exhibit No. 19, dated March 20, 1930, provided that the Farmers & Merchants State Bank of Benkelman would assume and pay on demand all deposits, including certificates of deposit, cashier's certified checks, and bills payable of the Bank of Benkelman, together with the interest on all of the above items, and provided that the Bank of Benkelman "and certain of its stockholders shall give to the Farmers & Merchants State Bank its note, guaranteed by E. L. Campbell, G. J. Owens, Paul Jones, L. T. Hamilton," but the last name is stricken out in ink, clearly showing that the note was to be guaranteed by only three stockholders, and not by L. T. Hamilton.

In the last part of paragraph 6 of the contract, we find this sentence: "In the event that there is still a deficiency, that is, an unpaid part of the Bank of Benkelman note, then and in such event nothing herein contained shall limit the right of the Farmers & Merchants State Bank to seek recovery for such deficiency through the individual liability of the signers and makers of the note, providing such liability obtains under the law."

In the collateral note, being exhibit No. 18, the indorsement upon the back reads as follows:

"Presentment, demand, protest and notice of dishonor waived. Payment of the within note guaranteed.

"G. J. Owens
"E. L. Campbell
"Paul Jones"

We have examined practically all of the cases cited in the very excellent briefs filed in this case, as well as going into the text-writers for their views on the very close questions presented herein. We have endeavored to analyze each of the propositions of law set out by the receiver for a reversal of the judgment of the lower court.

Many of the cases referred to as controlling arose in dire emergencies when a bank was facing instant insolvency. But, in the case at bar, the Bank of Benkelman was not found to be insolvent for months after the contract was given by the three stockholders, without any notice to the stockholders who are sued in this action. We cannot find that this hasty transfer of all the assets of this bank was regular, or carried out in a manner which would bind these stockholders on their double stock liability.

We cannot but realize that the district judge who tried this case was familiar with all of the details, and with the witnesses who testified before him, having held court for many years in that county, and we are inclined to the view that the evidence and the law support the trial court in finding generally for the stockholders Gottschalk, Hamilton and Ewing, and in dismissing the receiver's action against them.

AFFIRMED.